**Norman Elmer MILLER, Petitioner–Appellant,**

v.

**J.C. KEENEY, Superintendent, Respondent–Appellee.**

No. 88–4262.

United States Court of Appeals, Ninth Circuit.

Argued May 2, 1989.

Submitted May 18, 1989.

Decided Aug. 15, 1989.

Kenneth Lerner, Asst. Federal Public Defender, Portland, Or., for petitioner-appellant.

Linda DeVries Grimms, Asst. Atty. Gen., Salem, Or., for respondent-appellee.

Before TANG, BOOCHEVER and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

On a bright warm spring Wednesday morning in downtown Portland, Oregon, nearly a decade ago, Lownsdale Park was crowded with people out walking or sitting on benches. One of the more active was Norman Elmer Miller, who had left his car near the park and was seen by the police leaving a telephone booth and walking quickly through the park in a dark overcoat and sunglasses. Also in the park were a number of Portland police officers, engaged in what would prove to be an unsuccessful race against time: They had received an anonymous telephone call threatening that a bomb would go off somewhere in the downtown area sometime that morning. As the police officers scanned the downtown telephone booths for signs of the caller; as Miller left the park and reached his car to discover that he had been followed by two officers, who patted him down, advised him of his *Miranda* rights, and began to question him; as other police officers frantically tried to clear the unsuspecting public out of the park; a bomb exploded in an unoccupied restroom in one corner of the park and blew the restroom to bits. The police arrested Miller, who was subsequently convicted in Oregon state court of two counts of arson and one count of criminal mischief, and was given concurrent sentences of twenty years in prison, where he remains today.

But while the shock wave of the blast dissipated a fraction of a second after the restroom was destroyed, the explosion of April 23, 1980, still resonates through our legal system. Today, it provides the occasion for us to delineate one of the frontiers of the constitutional right to the effective assistance of counsel.

I

Miller was taken to the police station after his arrest. A police officer again advised him of his constitutional rights; Miller indicated that he wished to consult an attorney. Respecting his request, the police properly refrained from interrogating Miller until the following day, when counsel was provided.

Soon after Miller was taken into custody, however, the police seized his clothing, attempted to take handwriting samples, and swabbed his hands for chemical residues that would suggest Miller had recently handled explosives. While an officer was swabbing his right hand, Miller wiped his left hand on his trousers. No incriminating chemicals were detected on Miller's hands.

The officer who had performed the swabbing testified at trial about the hand wiping incident. Although neither the prosecutor nor the officer ever said so explicitly, Miller's conduct gave rise to the clear inference that he was attempting to wipe chemical residues off his left hand. Defense counsel objected strenuously to the officer's testimony, arguing that it infringed Miller's right to counsel and privilege against self-incrimination. The court overruled the objection. Miller was convicted.

Appellate counsel, a Deputy Public Defender, raised only one issue on direct appeal: She contended that Miller's arrest was invalid, and that evidence seized after he was arrested should accordingly have been suppressed. She did not assign error to the admission of evidence that Miller had wiped his hand on his trousers. Miller filed a pro se supplemental brief that raised a number of other issues, but also did not include discussion of the hand wiping incident. The Oregon Court of Appeals affirmed Miller's conviction. *State v. Miller,* 54 Or.App. 323, 634 P.2d 1361 (1981). The Oregon Supreme Court denied review. *State v. Miller,* 292 Or. 450, 644 P.2d 1128 (1982).

Appellate counsel informed Miller of the Oregon Supreme Court's decision in a letter that also informed him of the possibility of further review of his conviction. Counsel advised:

> As you are probably aware, you have 60 days from January 26 in which to petition for a writ of certiorari to the United States Supreme Court should you wish to pursue that option. It is not necessary

to file such a petition in order to protect your post-conviction rights. I do believe, however, that you can go directly to federal court on a habeas corpus petition concerning those issues which have already been litigated by the Oregon appellate courts.

Miller evidently interpreted the letter as advice to abandon his last possible stage of direct review and begin collaterally attacking his conviction: He refrained from filing a certiorari petition in the United States Supreme Court. Instead, he filed a petition for post-conviction relief in state court, which was denied at all levels of the state court system. *Miller v. Cupp,* 77 Or.App. 195, 712 P.2d 186 (1985), *review denied,* 300 Or. 704, 716 P.2d 758 (1986).

Miller then filed a petition in federal district court pursuant to 28 U.S.C. § 2254 (1982). The petition, which raised four claims, was denied. *Miller v. Keeney,* No. CV–86–6228–E (D.Or. Sept. 15, 1988). We review de novo. *Alford v. Rolfs,* 867 F.2d 1216, 1218 (9th Cir.1989).

Miller presses only two claims on appeal. He alleges that he was denied the effective assistance of appellate counsel because his attorney: (1) incorrectly advised him not to file a certiorari petition in the United States Supreme Court; [1] and (2) failed to raise the hand wiping incident on direct appeal. Both of these contentions lack merit, but for very different reasons.

## II

### A.  Advice Not to File a Certiorari Petition

■ **1.** Appellate counsel's letter never expressly advised Miller not to file a certiorari petition, but Miller's interpretation was not unreasonable. The letter presents certiorari as an option Miller could elect to pursue or not, but which would have no effect on the availability of post-conviction remedies. The tone of the letter suggests that petitioning for certiorari is an unnecessary formal step on the way to post-conviction relief; indeed, counsel explicitly advis-

---

**1.** Miller failed to raise this claim in state court, but the state did not object below to Miller's failure to exhaust state remedies. Whether to dismiss the claim or to address it is left to our discretion, *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987); in this case it makes no difference, as Miller loses either way.

es that Miller can proceed directly to federal court to file a habeas corpus petition raising those issues that had been raised before the Oregon appellate courts.

This advice was at best incomplete and may well have fallen below the constitutional standard of competence.[2] Six years before counsel wrote this letter, the Supreme Court had held that a state prisoner may not be granted federal habeas relief on the ground that evidence obtained during an unconstitutional search was introduced at trial, where the prisoner had been afforded an opportunity for full and fair litigation of his claim in the state courts. *Stone v. Powell,* 428 U.S. 465, 494, 96 S.Ct. 3037, 3052, 49 L.Ed.2d 1067 (1976). The one claim appellate counsel raised before the Oregon Court of Appeals had been precisely of this variety; she had alleged that evidence introduced at trial was the product of a search conducted incident to Miller's unlawful arrest, and should thus have been excluded. *Powell* precluded federal habeas review of this claim.[3] Accordingly, Miller had only one opportunity to have a federal court review the issue: He had to file a certiorari petition in the United States Supreme Court. This is what counsel advised him was unnecessary.

No doubt about it, Miller did not receive top-flight legal advice. But federal courts lack authority to afford habeas corpus relief to all victims of poor advice; a state prisoner must demonstrate "that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254 (1982). Before we can determine whether Miller was deprived of the constitutional right to the effective assist-

ance of counsel, we must ascertain whether he had such a right in the first place.

The due process clause of the fourteenth amendment guarantees a criminal defendant the right to the effective assistance of counsel on his first appeal as of right. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).[4] But the fourteenth amendment does not require a state to provide *any* counsel to a defendant seeking to file a certiorari petition in the United States Supreme Court. *Ross v. Moffitt,* 417 U.S. 600, 617–18, 94 S.Ct. 2437, 2447, 41 L.Ed.2d 341 (1974); *see also Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) ("the right to appointed counsel extends to the first appeal of right, and no further").[5] Miller's assertion of a right to the effective assistance of counsel thus must rest on one of two premises: He must argue that either (1) a constitutional right to the effective assistance of counsel can exist even where there is no constitutional right to counsel, such as where a state voluntarily provides legal advice to potential certiorari petitioners; or (2) counsel's letter is properly characterized as advice in her continuing role as direct appellate counsel, not certiorari counsel.

We must reject the first of these arguments. In *Wainwright v. Torna,* 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (per curiam), the Court made explicit what had been implicit in its prior opinions: The fourteenth amendment right to the effective assistance of appellate counsel is derived entirely from the fourteenth amendment right to appellate counsel, and the

---

**2.** As it is not necessary for us to determine whether counsel's performance fell below the standard set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *see* section II–B *infra,* we do not.

**3.** But *Powell* does not prohibit Miller from raising a claim of ineffective assistance of counsel based on his attorney's alleged mishandling of the fourth amendment issue. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

**4.** While the right to the effective assistance of counsel *at trial* is guaranteed to state criminal

defendants by the sixth amendment as applied to the states through the fourteenth, *Lucey,* 469 U.S. at 392, 105 S.Ct. at 834, the sixth amendment does not address a defendant's rights on appeal; the right to effective state appellate counsel is derived purely from the fourteenth amendment's due process guarantee. *Id.; Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963).

**5.** Neither does the Constitution require a state to appoint counsel for indigent prisoners seeking state post-conviction relief. *Murray v. Giarratano,* —— U.S. ——, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).

former cannot exist where the latter is absent. *Torna* held that a state criminal defendant has no fourteenth amendment right to the effective assistance of counsel when pursuing a discretionary state appeal. "Since respondent had no constitutional right to counsel," the Court observed, "he could not be deprived of the effective assistance of counsel." *Id.* at 587–88, 102 S.Ct. at 1301. The four-paragraph opinion relies on only one authority, *Ross v. Moffitt,* which denied the existence of a fourteenth amendment right to counsel for both discretionary state appeals and certiorari petitions.[6] 417 U.S. at 610, 615, 617–18, 94 S.Ct. at 2443–2444, 2446, 2447. It is impossible to escape the conclusion that the logic of *Torna* is equally applicable to petitions for certiorari: Because *Moffitt* found there to be no right to counsel in connection with the filing of certiorari petitions, there must be no corresponding right to the effective assistance of counsel.

*Torna,* which compels the result in this case, rests on a single proposition: If a state is not constitutionally required to provide a lawyer, the constitution cannot place any constraints on that lawyer's performance. *Lucey,* 469 U.S. at 397 n. 7, 105 S.Ct. at 836 n. 7 ("Of course, the right to effective assistance of counsel is dependent on the right to counsel itself.") (citing *Torna* ). Whatever the soundness of this logic, we observe that it has not commanded the Court's respect in other areas of the law. *See, e.g., Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (although the constitution does not require a state to assist the indigent, if it chooses to do so it must comport with the requirements of due process); *Widmar v. Vincent,* 454 U.S. 263, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981) (although the constitution does not require a state university to create a forum generally open for use by student groups, once it has done so it may not discriminate against forms of speech protected by the first amendment). Moreover, we cannot overlook the irony inherent in the fact that while the constitution does not require a state to provide any direct

appeals *at all, Lucey,* 469 U.S. at 393, 105 S.Ct. at 834; *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894), once it has done so a number of constitutional requirements spring into place: The state must provide free transcripts to indigent appellants, *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); cannot require indigent appellants to pay a filing fee, *Burns v. Ohio,* 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); and must provide an attorney, *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Why the provision of appellate counsel beyond the first appeal as of right should be treated any differently is not self-evident.

■ It is, nevertheless, what the Supreme Court has held, and it applies here: Because Miller had no constitutional right to counsel in connection with the filing of a certiorari petition, he had no constitutional right to the effective assistance of counsel for that purpose. We turn to his last possible line of argument, that the right to direct appellate counsel continues to exist in the period between losing a direct appeal and filing for discretionary review, so that his attorney was still performing the role of direct appellate counsel when she advised him not to file a certiorari petition.

This argument is foreclosed as well. *Torna* denied the right to counsel to a defendant whose petition for discretionary Florida Supreme Court review was filed too late, 455 U.S. at 588, 102 S.Ct. at 1301; if *Torna's* right to counsel did not extend to the late filing of a petition for discretionary review, it is difficult to discern a principle according to which Miller's right to counsel could extend to the failure to file such a petition altogether. The decision whether or not to petition for certiorari in the Supreme Court presupposes that a state defendant's opportunity for direct appeal, and thus the defendant's constitutional right to counsel, has come to an end. *See Ross v. Moffitt,* 417 U.S. at 616–18, 94 S.Ct. at 2446–2447 (1974). When Miller's lawyer

---

**6.** The grant of a writ of certiorari is, of course, discretionary. 28 U.S.C. § 1257 (1982); *Hicks v.*

*Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975).

advised him not to file a certiorari petition, she was no longer acting as counsel for his first appeal as of right; that appeal was long since gone, and with it went Miller's constitutional right to the effective assistance of counsel.[7]

2. The due process clause of the fourteenth amendment is deliberately worded broadly. Unlike many other constitutional guarantees, it has no meaning on its own; what constitutes due process is a matter determined by the prevailing norms of the day rather than by any textual directive. Thus, the due process clause guarantees criminal defendants a variety of procedural protections that would have been unthinkable a hundred years ago, but the absence of which would be considered shocking today. Judicial interpretation of the due process clause, like interpretation of the other broadly worded clauses of the constitution, is often a circular, but properly circular, enterprise. On one hand, customary practice gives content to the words of the constitution: If forty-nine states afford a particular procedural safeguard, but the fiftieth does not, that safeguard may be a good candidate for incorporation into the due process clause. On the other, the due process clause itself contributes to the formation of customary practice: It is a common observation that the way criminal defendants are treated in many areas of the country has changed dramatically over the last two generations, in large part because of judicial determinations that due process was lacking. As both cause and effect of actual practice, the due process clause (as given content by the courts) can be thought of as a rough barometer of views commonly held among the informed public as to how public institutions should interact with individuals.[8]

Looked at in this way, it is perhaps not surprising that the Supreme Court has interpreted the due process clause as not comprehending a right to counsel, and thus not including a right to the effective assistance of counsel, for the filing of certiorari petitions. Unlike direct appeals from criminal convictions, which were once relatively unusual but have now become common, review by the Supreme Court is rare; the Court reviews only a vanishingly small percentage of criminal convictions. Effective certiorari counsel is thus not something that most would consider essential to a fair trial: Since the Court is almost certain *not* to review any given case, the harm done by an incompetently drafted certiorari petition is not likely to be grave, and is not likely to cause public concern. Perhaps as an indirect result, that right is currently not embraced by the due process clause.

3. Miller's first contention, that he was denied the constitutional right to the effective assistance of counsel when his attorney advised him not file a certiorari petition, fails because the constitution guarantees him no such right. His second claim, that counsel was constitutionally ineffective because she failed to assign error on direct appeal to the admission of evidence of the hand wiping incident, does fall within the scope of the fourteenth amendment guarantee. *Lucey*, 469 U.S. at 396, 105 S.Ct. at 836. We consider it next.

B. Failure to Raise the Hand Wiping Incident

■ We review claims of ineffective assistance of appellate counsel according to the standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir.1986).

7. Here, this conclusion is reinforced by the fact that Oregon inserts a level of discretionary direct appellate review between the first appeal and the filing of a certiorari petition. Even if Miller somehow retained a constitutional right to counsel in the period between losing his first appeal as of right and filing his first discretionary appeal, that right would have expired once Miller petitioned the Oregon Supreme Court for discretionary review, and would have no longer

existed when he petitioned for certiorari in the United States Supreme Court.

8. *Cf. Stanford v. Kentucky*, — U.S. —, 109 S.Ct. 2969, 2974–79, 106 L.Ed.2d 306 (1989); *Penry v. Lynaugh*, — U.S. —, 109 S.Ct. 2934, 2953–55, 106 L.Ed.2d 256 (1989) (in determining whether a particular punishment is prohibited by the eighth amendment, courts must consider contemporary attitudes toward the punishment).

*See also Penson v. Ohio,* —— U.S. ——, 109 S.Ct. 346, 353–54, 102 L.Ed.2d 300 (1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the *Strickland* standard does not apply and prejudice is presumed; the implication is that *Strickland does* apply where counsel is present but ineffective). Miller must show that counsel's advice fell below an objective standard of reasonableness, *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–2065, and that there is a reasonable probability that, but for counsel's unprofessional errors, Miller would have prevailed on appeal. *See id.* at 694, 104 S.Ct. at 2068; *Birtle,* 792 F.2d at 849.[9]

These two prongs partially overlap when evaluating the performance of appellate counsel. In many instances, appellate counsel will fail to raise an issue because she foresees little or no likelihood of success on that issue; indeed, the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.[10] *See, e.g.,* Friedman & Lacovara, *Writing the Brief,* in *Appellate Advocacy* 99–102 (P. Carre, A. Ntephe & H. Trainor eds. 1981); R. Stern, *Appellate Practice in the United States* 266, 282–86 (1981); F. Wiener, *Briefing and Arguing Federal Appeals* 96–100 (1967). Like other mortals, appellate judges have a finite supply of time and trust; every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. For

these reasons, a lawyer who throws in every arguable point—"just in case"—is likely to serve her client less effectively than one who concentrates solely on the strong arguments.[11] Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason—because she declined to raise a weak issue. Such is the case here.

While raising the hand wiping incident on direct appeal would not have been frivolous, neither would it have led to a reasonable probability of reversal. The police did not interrogate Miller once he requested to confer with counsel; they only attempted to obtain physical evidence from him for the purpose of performing a scientific test. It is extremely doubtful that the Oregon Court of Appeals would have determined that Miller had a federal constitutional right to the presence of counsel during the swabbing, because the court would have been considering cases such as *Schmerber v. California,* 384 U.S. 757, 765–66, 86 S.Ct. 1826, 1832–33, 16 L.Ed.2d 908 (1966) (no right to counsel where police take blood sample), and *United States v. Wade,* 388 U.S. 218, 227–28, 87 S.Ct. 1926, 1932–33, 18 L.Ed.2d 1149 (1967) (no right to counsel, because counsel's absence causes only minimal risk of unfair trial, where police take fingerprints or samples of blood, clothing or hair) (dicta). Neither was there a reasonable probability that the court would have found such a right in the Oregon constitution. *See, e.g., State v. Gardner,* 52 Or.App. 663, 629 P.2d 412, 415 (1981) (no

**9.** The actual phrasing of the second prong in both *Strickland* and *Birtle* is this: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Birtle,* 792 F.2d at 849, quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. We did not make clear in *Birtle* whether "the proceeding" in question when evaluating appellate counsel's performance was the appeal or a potential second trial; that is, whether we should focus on whether there was a reasonable probability that the appellant would have won the appeal, or whether there was a reasonable probability that, once having obtained a reversal, the appellant would have prevailed at retrial. *Birtle* concentrates on the appeal, so we

assume that the appeal is the relevant proceeding to consider.

**10.** This is the primary reason appellate counsel has no constitutional obligation to raise every nonfrivolous issue requested by the defendant. *Jones v. Barnes,* 463 U.S. 745, 751–54, 103 S.Ct. 3308, 3312–14, 77 L.Ed.2d 987 (1983).

**11.** We detect an unfortunate conflict between the interests of the client, which often call for selectivity, and the interests of counsel, which may be best served by including every conceivable issue and thereby avoiding a claim that she incompetently omitted an argument. We must rely on the professionalism of appellate counsel to resolve such conflicts in favor of the client.

right to counsel for police station breathalzyer test, relying heavily on *Wade* ).

Counsel similarly did not err by failing to claim on appeal that the admission of evidence indicating Miller's refusal to submit to the test violated Miller's privilege against self-incrimination.  Such a claim did not have a reasonable probability of succeeding, either under the federal constitution, *see, e.g., Schmerber*, 384 U.S. at 765, 86 S.Ct. at 1832; *Rhode Island v. Innis*, 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980) (*Miranda* rights attach only where police subject suspect in custody to express questioning or its functional equivalent); *South Dakota v. Neville*, 459 U.S. 553, 563–64, 103 S.Ct. 916, 922–23, 74 L.Ed.2d 748 (1983) (evidence of refusal to submit to blood-alcohol test may be admitted at trial without offending privilege against self-incrimination), or the Oregon constitution, *Gardner*, 629 P.2d at 416 (relying heavily on *Schmerber* ).

Because Miller had only a remote chance of obtaining reversal based upon the admission of evidence of the hand wiping incident, he cannot satisfy either of the *Strickland* prongs: Appellate counsel was not ineffective for failing to raise the issue, and Miller suffered no prejudice on account of counsel's performance.  Miller was accordingly not denied his constitutional right to the effective assistance of appellate counsel.

### III

The judgment of the district court, denying Miller's petition for a writ of habeas corpus, is affirmed.