66 F.3d 334
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
William Gerald BROYLES, Petitioner-Appellant,
v.
Samuel LEWIS, Director, Arizona Department of Corrections;
Attorney General for the State of Arizona,
Respondents-Appellees.
 No. 94-16141.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 14, 1995.
Decided Sept. 1, 1995.
 
 Before: NORRIS, WIGGINS, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 BACKGROUND
 
 2
 Broyles was tried in the Superior Court of Coconino County, Arizona on four counts of molesting his adopted step daughters. Three counts related to his older daughter, Linda, and one count related to his younger daughter, Sherry. On February 28, 1985, when Linda was fourteen, she told a teacher that Broyles had sexually molested her in the past. Sherry subsequently was questioned and she echoed the accusation. The state's case focused almost exclusively on Linda's testimony, however, because Sherry had recanted her accusations prior to trial. Sherry testified at trial that Broyles had never molested her.
 
 
 3
 Broyles provided alibi evidence for each alleged incident as well as extensive evidence of his good character. His wife--the girls' natural mother--also testified on his behalf.
 
 
 4
 Numerous egregious errors infected the nine-day trial. For example, various witnesses (including the original prosecutor on the case) improperly testified to their belief that Linda and/or Sherry were telling the truth; evidence of Broyles' post-arrest silence was improperly admitted; and the prosecutor's closing argument contained numerous improper statements in which he vouched for the state's witnesses and argued facts not in evidence. Defense counsel, Michael Flournoy, objected to some but not all of the errors. On February 18, 1986, the jury found Broyles guilty on all four counts. The trial court sentenced Broyles to a 14-year term of imprisonment.
 
 
 5
 Broyles' attorney on direct appeal, William Piatt, without requesting the transcript of closing arguments, initially alleged only two trial errors. The Arizona Court of Appeals sua sponte ordered briefing on two additional issues. That court affirmed Broyles' conviction without holding an evidentiary hearing, and the Arizona Supreme Court denied review.
 
 
 6
 Broyles then sought state post-conviction relief pursuant to Ariz.R.Crim.P. 32. His new (and current) attorney, Natman Schaye, raised eight issues, including the ineffectiveness of Broyles' trial and appellate counsel. The state trial court determined that seven of the issues were procedurally barred under Ariz.R.Crim.P. 32.2 because Broyles either had or could have raised them on direct appeal. Without holding an evidentiary hearing, the state court summarily denied the ineffective assistance of appellate counsel claim. The Arizona Court of Appeals affirmed, and the Arizona Supreme Court denied review.
 
 
 7
 Broyles filed a petition for habeas corpus relief in the United States District Court for the District of Arizona. The petition alleged eight errors. The district court dismissed three of the alleged errors, concluding that Broyles had procedurally defaulted on those claims by failing to raise them in state court, and that Broyles had not demonstrated cause and prejudice to excuse the default. After holding a hearing on the effectiveness of appellate counsel, the district court concluded that none of Broyles' remaining claims warranted habeas relief, and the court accordingly denied the petition. We reverse the district court and order the writ issued.[1]
 
 DISCUSSION
 
 8
 Broyles argues that habeas relief is warranted based on any of three constitutional infirmities in his state proceedings: (1) numerous trial errors deprived him of a fair trial, in violation of the Due Process Clause; (2) errors by his trial attorney deprived him of effective assistance of counsel at trial; and (3) errors by his state appellate attorney deprived him of effective assistance of counsel on direct appeal. We reach only Broyles' contention that he was denied his constitutional right to effective assistance of counsel during his direct appeal to the Arizona Court of Appeals.
 
 
 9
 To obtain relief on the ground of ineffective assistance of appellate counsel, Broyles must satisfy both prongs of the test set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Morrison v. Estelle, 981 F.2d 425, 427 (9th Cir.1992), cert. denied, 113 S.Ct. 2367 (1993); Miller v. Keeney, 882 F.2d 1428, 1433-34 (9th Cir.1989). Thus, Broyles must demonstrate that his counsel's performance fell below an objective standard of reasonableness, see Strickland, 466 U.S. at 688, and that there is a reasonable probability that, but for counsel's errors, Broyles would have prevailed on appeal, see id. at 694; Miller, 882 F.2d at 1434 & n. 9.
 
 
 10
 As to the first prong, we conclude that appellate counsel's performance was constitutionally deficient. Counsel initially raised only two issues in his appellate brief, neither of which, as he later admitted, was particularly strong.[2] The first issue he raised, the admissibility of uncharged sexual misconduct, had already been decided adversely to Broyles by the Arizona Supreme Court.[3] The second issue, the specificity of the dates of offense charged in the indictment, had been waived by trial counsel. Meanwhile, several stronger arguments went unaddressed.[4]
 
 
 11
 The most obvious omission by appellate counsel was his failure to allege prosecutorial misconduct during closing argument. The decision to omit this argument cannot be excused as a "tactical" one,[5] because counsel's failure to raise it was due to his failure to request or review the transcript of closing argument. Because he did not have the transcript, counsel "did no research at all on anything" related to the closing arguments. Cf. Deutscher v. Whitley, 884 F.2d 1152, 1159 (9th Cir.1989) (finding deficient performance where "[c]ounsel made no tactical decision not to investigate [his client's] possible mental impairment. He simply failed to do so."), vacated on other grounds sub nom. Angelone v. Deutscher, 500 U.S. 901 (1991). Appellate counsel later admitted that the prosecutor's closing argument contained "very significant" errors of "constitutional dimension" that should have been raised, and that he would have raised had he been aware of them.
 
 
 12
 Counsel failed to raise other claims as well, such as the improper admission of lay opinion testimony regarding Linda and/or Sherry's truthfulness and Broyles' guilt, or the improper exclusion of a defense expert who had examined Broyles and would have testified to Broyles' lack of sexual abnormalities. We do not believe that these omissions can be characterized as "tactical decisions," because in his later deposition, counsel admitted that he had not even recognized many of the unraised claims when he reviewed the trial transcript.
 
 
 13
 Moreover, although appellate counsel, in his deposition, did characterize some of his decisions about which issues to raise as "tactical decisions," we conclude that the basis for his decisions was so unreasonable that those decisions, as well, indicate deficient performance. Cf. Strickland, 466 U.S. at 689, 691 ("sound " or "informed " strategic decisions about which issues to raise on appeal will not indicate deficient performance) (emphasis added). Counsel's "tactical choices" rested on his beliefs that (1) the state courts adhered to a system of "western justice," wherein they would often overlook or disregard federal constitutional errors, and (2) any arguments he failed to raise in state court could and should be raised later in federal district court or on a direct appeal to the U.S. Supreme Court. Without deciding whether the former belief may form the basis for a reasonable tactical decision, we conclude that the latter does not. Counsel's decision cannot be a reasonable one where it rests on such a fundamental misunderstanding of the judicial process. Counsel apparently had no idea that by failing to raise claims in state court, his client would be procedurally barred from pursuing those claims in federal court, absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." See Coleman v. Thompson, 501 U.S. 722, 750 (1991).[6]
 
 
 14
 Even as we criticize counsel's decision regarding which claims to raise on direct appeal, we emphasize that appellate counsel does not have a duty to raise every nonfrivolous issue. See Jones v. Barnes, 463 U.S. 745, 754 (1983); Miller, 882 F.2d at 1434. In fact, "the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." Miller, 882 F.2d at 1434. That is not what happened in this case, however. Counsel did not "weed[ ] out" the weaker issues; he raised them, while neglecting other, stronger issues. It is the inadequacy of counsel's comparative assessment that forms the primary basis for our finding of deficient performance. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.1994) ("a petitioner may establish constitutionally inadequate performance if he shows that [appellate] counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker"), cert. denied, 115 S.Ct. 81 (1994); Matire v. Wainwright, 811 F.2d 1430, 1438 (11th Cir.1987) (court's finding of deficient performance "is bolstered by the fact that appellate counsel's brief on direct appeal raised only a single, weak issue, notwithstanding the fact that a substantial, meritorious Fifth Amendment issue was obvious upon even a casual reading of the trial transcript"); Gray v. Greer, 800 F.2d 644, 646 (7th Cir.1985) ("Had appellate counsel failed to raise a significant and obvious issue, the failure could be viewed as deficient performance.").
 
 
 15
 We conclude that appellate counsel's various errors and omissions, combined with his wholesale failure to investigate key portions of the trial court record and his unfounded assumptions about habeas corpus law, constitute deficient performance. Cf. Wade v. Calderon, 29 F.3d 1312, 1325 (9th Cir.1994) (deficient performance during penalty phase found because of the "cumulative effect of counsel's errors," even though "several of counsel's individual decisions, taken in isolation, might arguably have been justified"), cert. denied, 115 S.Ct. 923 (1995).
 
 
 16
 As to Strickland 's second prong, we conclude that Broyles was prejudiced by appellate counsel's deficient performance, because we find that absent counsel's errors and omissions, there is a "reasonable probability" that the outcome of Broyles' appeal would have been different.
 
 
 17
 Arizona case law suggests that several of the errors counsel failed to raise would have been grounds for reversal. First, several of the prosecutor's statements during closing argument were highly improper. For example, the prosecutor vouched for the credibility of the state's witnesses, (e.g., "Steve [Luckesen] is a good cop. I have worked with him for a long time, and I know it."), including the alleged victim, Linda, (e.g., "[Linda] is willing to suffer the consequences [of coming forward with her accusations], she has done it, and she's told you the truth"). The prosecutor also bolstered the state's case by describing facts not in evidence, such as information about the "typical" child molestation case:
 
 
 18
 Most child molesting cases proceed along about the same guidelines. What happens is, the girl makes the accusation, and a lot of people think that, well, criminals just confess. You arrest the guy, and he just says, oh, yeah, I did it. Actually, in my experience, criminals don't say, yeah, I did it, I'm sorry, I'll change. From the very moment they even know that there's a charge developing against them, their attitude is, how do I get myself out of this? And in child molesting cases, that attitude takes the following procedures: First of all, the idea is to discredit the child. You discredit her by saying she's a liar, that she is promiscuous with other people or that her hatred for her father is so great that she'll do anything in the world to get rid of him.
 
 
 19
 Most appallingly, during his rebuttal closing, the prosecutor stated:
 
 
 20
 First of all, the inference is that we just pick somebody off the street, we don't screen the information, we don't do anything with it, we just accept what somebody says and we file the charge.
 
 
 21
 Especially in child-molesting type cases, there are processes that we use. First of all, Linda had to convince her teacher ... before it went any further; then she had to convince the principal before they called Child Protective Services; and Child Protective Services had to be convinced before they called the Sheriff's Office, and then the Sheriff's Office has to write a report that they are convinced that the charge should go on, it goes to the County Attorney, and then the County Attorney reviews all the evidence and decides whether or not there is sufficient evidence to go to the grand jury, and then the grand jury reviews all of the evidence that's presented to them, and they decide whether or not you hear the case.
 
 
 22
 So it's ridiculous to think that we bring them in here on no evidence whatsoever.
 
 
 23
 The vouching that occurred in this case is grounds for reversal under Arizona law, even though trial counsel failed to object.[7] Cf. State v. Bible, 858 P.2d 1152, 1204 (Ariz.1993) ("prosecutor's improper statement[s] constitute[ ] fundamental error [if], ... under the circumstances, ... the jurors were probably influenced and ... the statement[s] probably denied Defendant a fair trial"). Vouching for the alleged victims' credibility was particularly unfair because there was virtually no other evidence that Broyles had molested either girl. Because the vouching was particularly likely to have affected the jury's verdict, the state appellate court would be especially likely to find reversal warranted. Cf. United States v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991) ("[v]ouching is especially problematic in cases where the credibility of the witnesses is crucial," and such vouching has often required reversal); State v. Vincent, 768 P.2d 150, 156 (Ariz.1989) (suggesting that there is higher likelihood of prejudice when prosecutorial vouching occurs in a case in which credibility of key state witness is suspect).[8]
 
 
 24
 Second, had counsel appealed the trial court's exclusion of a defense expert, reversal would have been likely on that basis. See Pincock v. Dupnik, 703 P.2d 1240, 1244-45 (Ariz.Ct.App.1985) (reversing judgment where, "[i]n view of the fact that the trial court let the defendant introduce expert testimony on the issue, it was blatantly erroneous for the trial court to exclude the testimony of [a qualified plaintiff expert]"). The state introduced and argued evidence that was meant to show that Broyles had an abnormal sexual interest in young girls. In response, the defense sought to introduce testimony by a psychologist who had examined and tested Broyles and found no sexual abnormalities. Because this case turned primarily on the jury's credibility assessments of Broyles and his accuser, exclusion of the expert testimony was especially likely to constitute reversible error. See State v. Roberts, 677 P.2d 280, 284-87 (Ariz.Ct.App.1983) (exclusion of expert testimony regarding alleged molestation victim's mental state was reversible error, based in part on principle that "the jury should be informed of all matters which may in the slightest degree affect a witness' credibility").
 
 
 25
 A third, but admittedly weaker, claim could have addressed the impermissible opinion testimony by numerous witnesses regarding Linda and/or Sherry's truthfulness and Broyles' guilt.[9] See State v. Williams, 650 P.2d 1202, 1209-11 (Ariz.1982) (noting that "[t]he opinions of a witness regarding questions of truthfulness and guilt are generally inadmissible," but finding such opinions admissible "under the rather unusual circumstances" of that case); see also State v. Lindsey, 720 P.2d 73, 76 (Ariz.1986) (even expert witnesses should not be allowed to give "opinion testimony, such as their belief of guilt or innocence"). Multiple government witnesses, including the prosecutor originally assigned to the case, testified to that effect. The weakness of this claim results from trial counsel's failure to object to much of the impermissible testimony. As a result, reversal would only be warranted if that testimony deprived Broyles of "a right essential to his defense," or rendered a fair trial impossible. See State v. King, 763 P.2d 239, 244 (Ariz.1988) (quotations omitted).
 
 
 26
 Trial counsel did object to the opinion testimony of the original prosecutor on the case, Mickaela Therrian, and thus, at least as to Therrian's testimony, appellate counsel would not have had such a high hurdle to surmount, had he raised the issue. See id. The district court, over trial counsel's objection, initially allowed Therrian to testify, inter alia, about Linda's prior consistent statements to Therrian.[10] In effect, Therrian was allowed to testify that, based on her conversations with Linda and Sherry, and based on the girls' accounts of molestation by Broyles, she was convinced that a criminal complaint should be filed against Broyles. The inference is inescapable that Therrian believed the girls and their accusations against Broyles. Therrian also was allowed to describe how she and Linda identified specific dates of molestation, thus bolstering the accuracy of the dates charged in the indictment.
 
 
 27
 We need not, and do not, decide whether appellate counsel's decision to raise or not raise any single issue was outcome determinative (i.e., would have led the appellate court to reverse Broyles' conviction). We conclude that, in combination, counsel's errors and omissions were prejudicial. We find a "reasonable probability" that the Arizona Court of Appeals would have reversed Broyles' conviction and ordered a new trial if appellate counsel had presented the additional, strong claims that were available in this case. See, e.g., Elledge v. Brand, 429 P.2d 450 (Ariz.1967) (granting new trial where prosecutorial misconduct during closing argument was coupled with erroneous admission of highly prejudicial evidence).
 
 
 28
 The state argues that appellate counsel's performance could not have resulted in prejudice because, even absent counsel's errors and omissions, there is not a reasonable likelihood of a different outcome to Broyles' appeal. According to the state, any failure by Broyles' counsel to raise additional arguments was harmless, because the Arizona Court of Appeals affirmed Broyles' conviction after reviewing the record for "fundamental error." Pursuant to this review, the appellate court requested supplemental briefing on two issues. As its decision makes clear, however, the Court of Appeals confined its review to the four issues (two originally raised and two supplementally briefed), as they were briefed. Thus, for example, the court evaluated the ineffective assistance of trial counsel claim in light of the single error cited by appellate counsel, although a close reading of the trial record convinces us that other obvious errors warranted consideration as well. We remain unconvinced that the appellate court's fundamental error review is a constitutionally adequate substitute for effective appellate counsel. The appellate court's fundamental error review in this case, therefore, cannot render counsel's deficient performance "harmless."
 
 CONCLUSION
 
 29
 We reverse the district court and direct that the writ of habeas corpus shall issue unless, within 60 days, the state affords Broyles an opportunity to present his appeal to the Arizona Court of Appeals, as if it were properly and timely presented, or, in the alternative, affords Broyles a new trial. In light of this disposition, Broyles' motion for release pending appeal is dismissed as moot.
 
 FERNANDEZ, Circuit Judge, concurring:
 
 30
 I concur in the result of the disposition of this case. I agree that appellate counsel's representation was constitutionally defective. However, I do not agree with the characterizations throughout the disposition which virtually decide that Broyles' conviction should be reversed, even while eschewing the making of that decision. Indeed, I am inclined to think that as far as the federal constitution is concerned, Broyles had a fair trial and that trial counsel was not ineffective.[1]
 
 
 31
 However, given a properly counseled appellate review, the Arizona courts might well decide to reverse Broyles' conviction. He ought to have a fair opportunity to attempt to achieve that result.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We have jurisdiction over Broyles' timely appeal pursuant to 28 U.S.C. Sec. 2253. We review the district court's denial of Broyles' habeas petition de novo. See Sanders v. Ratelle, 21 F.3d 1446, 1451 (9th Cir.1994)
 
 
 [2]
 In his subsequent deposition, counsel characterized the first point as "not terribly effective" and the second as "a throwaway."
 
 
 [3]
 We do not mean to suggest that a decision to raise an issue that had been previously decided is, by itself, an indication of deficient performance. As the following discussion should make clear, our point is that the decision to raise such an issue, at the expense of other, clearly stronger issues, suggests deficient performance
 
 
 [4]
 The state appellate court's sua sponte order for additional briefing on two issues is further indication that counsel had missed key arguments. The court ordered briefing on (1) the introduction of evidence of Broyles' post-arrest silence, and (2) ineffective assistance of trial counsel. Counsel's briefing of the latter issue is yet another indication of deficient performance. Despite numerous errors appellate counsel could have identified that would indicate ineffectiveness by trial counsel, appellate counsel raised only one, and one that was not particularly egregious. He argued only that trial counsel was ineffective for failing to request a pretrial voluntariness hearing regarding a post-Miranda statement made by Broyles. However, a voluntariness hearing was held during trial, at defense counsel's request, prior to the state's introduction of the statement. Appellate counsel failed to argue any other possible errors, such as trial counsel's failure to object to the lack of specific dates in the indictment (and counsel's resulting waiver of the issue), or trial counsel's failure to object to the prosecutor's improper statements during closing argument, or his failure to object to the testimony of some of the lay witnesses who improperly testified regarding Linda and/or Sherry's truthfulness and Broyles' guilt
 
 
 [5]
 Generally, counsel's tactical decisions cannot form the basis for an ineffective assistance claim. See Territory of Guam v. Santos, 741 F.2d 1167, 1169 (9th Cir.1984)
 
 
 [6]
 We note that counsel's background and experience in this area is very limited: At the time of Broyles' appeal, he had handled few post-conviction matters of any sort, and he had never worked on a habeas corpus petition. Cf. Paradis v. Arave, 954 F.2d 1483, 1490-91 (9th Cir.1992) (because the court concluded that defense counsel "was not completely inexperienced in criminal matters," the court rejected petitioner's argument that counsel's inexperience rendered him ineffective), vacated on other grounds, 113 S.Ct. 1837 (1993)
 
 
 [7]
 This failure to object would also have provided the strongest support for appellate counsel's argument (made only after the appellate court's sua sponte request) that trial counsel had been ineffective. Although the appellate court rejected the ineffectiveness claim, it did so solely on the basis of the one, particularly weak, alleged error cited by appellate counsel. See supra note 4. Had appellate counsel raised additional errors by trial counsel, the outcome of the appeal might well have been different
 
 
 [8]
 If defense counsel's closing argument "invites" an improper response from the prosecutor, such as otherwise impermissible vouching, the response is less likely to constitute reversible error. See State v. Henry, 863 P.2d 861, 874 (Ariz.1993). In this case, however, the "invited response" doctrine does not apply to the numerous improper statements that were made in the prosecutor's initial closing argument. Although the doctrine could apply to the statements made during rebuttal closing, those statements arguably were sufficiently egregious to prejudice Broyles. See id
 
 
 [9]
 For example, a caseworker from the Department of Economic Security testified, in part, as follows:
 Q [by prosecutor]: Well, what are your beliefs?
 A [by Hickman]: At this point in time, I believe that, in regards to which child or a child, do you want a specific, or what do you want?
 Q: Well, we were talking about whether or not you believed [Linda and Sherry]?
 A: Yes, I do believe them.
 Q: You believe that Jerry Broyles molested them, right?
 A: I believe the children were molested, yes.
 
 
 [10]
 Upon defense counsel's further objection, the trial court barred further testimony regarding Linda's prior consistent statements
 
 
 [1]
 For example, the error that the disposition says was most appalling was a response to an argument by defense counsel that everyone just accepted the victim's lie without using the usual processes to determine whether Broyles should be prosecuted. That argument, by the way, went on to speak of Jesus' prosecution on the basis of a lie and expressed the hope that the jury would not permit Broyles' life to be similarly destroyed