No. 36,370

JOHN HERBERT WALLACE, *Appellant,* v. THE SOUTHWESTERN SANITARIUM COMPANY (Defendant), *Appellee,* and CORA C. WALLACE, and VELMA BERNICE PURPUS (Interveners), *Appellees.*

(161 P. 2d 129)

Opinion filed July 26, 1945.

*Homer V. Gooing,* of Wichita, argued the cause, and *Howard T. Fleeson, Wayne Coulson, Paul R. Kitch* and *Manford Holly,* all of Wichita, were on the briefs for the appellant.

*B. F. Alford,* of Wichita, argued the cause for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover on certain mortgage bonds. Plaintiff's demurrers to the answers of the corporate defendant and of the individual interveners were overruled and he appeals.

Omitting matters not material to the appeal, the pleadings disclosed the following: In his petition plaintiff alleged he was the owner of Third Mortgage Gold Bonds issued by the defendant The

Southwestern Sanitarium Company, hereafter referred to as the corporation, dated December 31, 1928, and due January 1, 1939, in the principal amount of $18,287.50; that the bonds were issued under a deed of trust, duly recorded, between the corporation and The Wheeler-Kelly-Hagny Trust Company. A copy of one of the bonds, with ten annual interest coupons, and identical with the others except for amount, was attached as an exhibit. Plaintiff alleged the amount of principal and interest due and prayed judgment for that amount. It is here observed the plaintiff did not seek in any manner to have foreclosure under the deed of trust.

In its answer the corporation admitted execution of the bonds and alleged that all interest coupons prior to January 1, 1939, were barred by the statute of limitations; that it was formerly a corporation for profit with a capital stock of $40,000 and was converted into a nonprofit charitable corporation for the purpose of conducting an osteopathic hospital and the original common stock was exchanged for an issue of $100,000 par value of third mortgage bonds; that under the bylaws the members of the corporation should be the holders of said bonds and each member should have one vote for each $100 of the par value of the bonds held by him; that Dr. H. C. Wallace, husband of Cora C. Wallace and father of Velma Bernice Purpus and of the plaintiff died November 13, 1939, the holder of $66,100 of the par value of said third mortgage bonds and under his will one-half thereof was bequeathed to his widow and one quarter each to his two children; that a controlling interest in said bonds was held by Doctor Wallace to make sure the hospital would be maintained and operated, and in order to preserve the corporation and the conduct of the hospital and to protect their interests the plaintiff and his mother and sister entered into a contract for the placing of said bonds with Wheeler-Kelly-Hagny Trust Company, where they were to remain for fifteen years. A copy of this contract was attached to the answer and is later mentioned. It was further alleged that except for one $50 bond, all bonds were still held in escrow. Then follows an allegation that plaintiff, his mother and sister held $75,000 of the third mortgage bonds with attributes of ownership, membership and voting powers, and it is to their interest the functions of the corporation continue and that it be not disorganized and its property depreciated and dissipated, and that the agreement inures to the benefit of the defendant corporation by reason of the pro-

visions of the contract; that the maintenance of the present action is in effect a violation of the contract in that granting plaintiff judgment would be a discontinuance of plaintiff's ownership in the bonds and a withdrawal of the same from the escrow, a discontinuance of the voting power thereof and of the rights of membership connected therewith, and would deprive the other parties to the contract of any participation in such rights granted to them by virtue of the contract in reciprocation of the rights granted by them in their bonds and the incidents thereto. Then follows an allegation that plaintiff should not be permitted to violate the contract and that the mother and sister should be permitted to intervene.

It was further alleged in the answer that while the bonds became due January 1, 1939, and would have outlawed on January 1, 1943, defendant and all owners of bonds except plaintiff were willing to extend the maturity thereof, and upon plaintiff's refusal to agree, the corporation acknowledged in writing the indebtedness due on the bonds and delivered plaintiff a signed copy; that two installments of interest have subsequently been paid and the liability on said bonds renewed for a period of five years, and the corporation is informed that all holders except the plaintiff are willing that the bonds be renewed and the maturity extended. After setting forth the bylaws as to voting rights, it is further alleged that in view thereof, the existence of the corporation depends upon the existence and continuance of the third mortgage bonds, and it was not the intent of the holders of the common stock when exchanged for third mortgage bonds, nor of the holders of said bonds, that the bonds should be liquidated or foreclosed or reduced to judgment without the holders of one-third of said issue requesting the trustee to foreclose the same as provided in the deed of trust securing the bonds; that said bonds were issued under and are governed by the provisions of said deed of trust and the holders of one-third of said bonds have not requested action on said bonds by the trustee or for foreclosure and plaintiff is not authorized to maintain an action on the bonds. We note there is no further statement as to the conditions of the deed of trust and no copy is made a part of the pleading.

The application of Cora C. Wallace and Velma Bernice Purpus to intervene and defend was allowed and they filed their answer. So far as is now material, their answer raised substantially the same defense as did that of the corporation. A copy of the con-

tract between them and the plaintiff was made a part of their answer.

The contract referred to in the above answers is dated February 1, 1940, and is by and between Cora C. Wallace, John Herbert Wallace and Velma Bernice Purpus, and no other person. It contains seven "whereas" clauses in which it is noted that the parties are legatees under the last will of Herbert Wallace, who bequeathed to them his personal property including $66,100 of the par value of the third mortgage bonds above mentioned and also $7,000 of the second mortgage bonds of the same corporation. After noting that certain of the parties individually owned first and third mortgage bonds of certain amounts and that they would receive others of the third mortgage bonds upon final distribution of the Herbert C. Wallace estate and that the voting power of the corporation was vested in the holders of the third mortgage bonds, it was stated to be the desire of the parties to the contract that said bonds should remain the property of the parties for a period of fifteen years from the date of the contract, except only such bonds as should be previously paid off. It was then agreed that in consideration of their mutual promises, all of the bonds then held or subsequently purchased by any of the parties should be placed in escrow with The Wheeler-Kelly-Hagny Trust Company, to be held by the escrow agent during the fifteen years under certain conditions for surrender not necessary to be noticed. The ninth paragraph of the contract provided that during the period of fifteen years none of the parties should sell his or her bonds to any other person than one of the other parties without all of the parties consenting to the sale and the escrow agent was directed and instructed not to release any of said bonds from escrow during said period without being so authorized. Then followed extensive provisions for the voting of said bonds by the unanimous agreement of the parties and for an arbiter in the event they could not agree, it being provided, however, that insofar as voting for directors was concerned if the parties could not unanimously agree, each was granted the power to vote one-third of the bonds for himself or herself as director, notwithstanding he did not own that amount of the bonds. Further provision was made that if the bonds were refunded or substituted by a new issue of bonds carrying with them membership and voting power, the agreement should continue in force and effect as to such new bonds and such new bonds were to be placed with the escrow agent to

be held and delivered under the terms of the agreement. Provision was also made that the incompetency or death of any one of the parties should not terminate the contract but the legal representative was vested with the same rights, privileges and obligations as the party himself had under the contract. Under the seventeenth clause of the contract it was provided that upon the expiration of said fifteen years, or upon the termination of the agreement if the same should be sooner terminated, all of the bonds then in escrow should be distributed by the escrow agent to the parties entitled as the owners thereof. Further provision made the rights, benefits and obligations existing under the contract extend to and be binding upon the heirs, legatees, personal representatives of the parties and the assignees where assignment is permitted. The last paragraph is a statement of the amount of bonds held by each of the individual parties. Endorsed on the contract is a consent of the escrow agent to act and a receipt for the several bonds mentioned in the contract.

The plaintiff demurred separately to the answers of the corporation and of the interveners, and those demurrers being overruled he perfected his appeal in due time. His specification of errors includes error in permitting the intervention and error in overruling the demurrers. For convenience we shall refer to the parties as they appeared below.

In his brief, plaintiff states that it may have been a proper exercise of discretion by the trial court to permit the intervention, but the answer filed by the interveners disclosed no right on their part to ask that plaintiff be denied relief. In view of that concession and of the fact that no contention is made that the allowance of intervention was erroneous, we shall not discuss further the first specification of error but shall confine ourselves to whether the answers stated a defense.

In a general way plaintiff contends the contract pleaded in the answers was not for the benefit of the corporation, and it may not take advantage thereof, but it cites no authorities in support. The contract is later discussed but it may be remarked here that if the contract be construed that the interveners are entitled to urge it to prevent plaintiff's maintenance of his action, the corporation of necessity does benefit thereby. In connection with the above, plaintiff further contends that if the contract be construed to benefit the corporation, by depriving plaintiff of his right to sue for fifteen years, the agreement is contrary to public policy and in violation

of G. S. 1935, 60-306 *Seventh,* in that it provides for an enlarged statute of limitations. Whether that result follows depends on the terms of the contract, a matter later discussed.

Plaintiff's principal contention is that the contract does not preclude him from maintaining his action. The sum and substance of the argument is that although in one of the "whereas" clauses there is a statement that it is the desire of the parties that the ownership of the bonds remain the property of the parties for a period of fifteen years, there is no provision in the contractual portion to that effect, where the agreement is that none of the parties shall sell any bonds except to the other parties, and that it was not intended that each of the parties should retain all of his bonds for the full period as it is expressly provided either might sell to the others. It is also contended that there is no provision of the contract susceptible of construction as a waiver of plaintiff's right to sue on his bonds and protect himself, and that there was no waiver by contract of a right to sue. Our attention is also directed to the fact that the parties to the contract do not hold all of the third mortgage bonds, and it is argued either one of the parties ought not to be powerless to protect himself in any action taken by other bondholders. Plaintiff also attacks the agreement as being in apparent violation of G. S. 1943 Supp., 17-3307, which provides that voting trust agreements irrevocable for periods of more than ten years are void, and in support cites *Perry v. Missouri-Kansas, P. L. Co.,* 22 Del. Ch. 33, 191 Atl. 823, where it is said such statutes are mandatory and not to be liberally construed. Some other argument is predicated on what the trustee under the deed of trust which secured the third mortgage bonds may do. That particular argument may be ignored for the trustee named is not a party. We cannot assume in this case that the trustee may not fully perform its duties under the deed of trust.

The gist of the argument of the corporation and of the interveners in opposition is that under the agreement, the parties pooled their interests in the bonds placed in escrow and provided thereafter for joint, and not several, control over them, and under the agreement the substance is that none of the bonds shall be converted, merged in judgment or in effect withdrawn from the escrow without consent of all the parties; that if plaintiff is permitted to reduce his bonds to judgment, any rights under the bonds are merged in the judgment, and by such action plaintiff will ac-

complish by indirection what he has specifically agreed not to do directly. They also direct our attention to certain cases dealing with contracts held to be for the benefit of a third party. They also answer plaintiff's contention that the contract creates a voting trust agreement in violation of statute by saying that bonds, not stock, are the subject of the contract and that the statute does not apply.

It is not necessary that we devote any time to a discussion of third party beneficiary contracts, for as has been observed, if the interveners may prevent plaintiff's maintenance of his action, the corporation receives a benefit, even though the contract was not made primarily for its benefit, nor even though it was not intended to benefit it.

In our opinion the contract in question does not offend the provisions of G. S. 1943 Supp. 17-3307, as creating a voting trust of deposited certificates of capital stock irrevocable for a period of more than ten years. We shall assume for present purposes that the voting privileges accorded the third mortgage bonds make them the equivalent of shares of stock. The present contract however did not vest in the deposit agent or trustee the right to vote the stock as specified in the statute—that right was expressly reserved to the depositors under the conditions heretofore mentioned. But assuming the statute is applicable, the limitation against irrevocability for a period of more than ten years does not apply where the voting rights granted are coupled with an interest in the shares to which they relate and as defined in the statute. If, under the present contract, any voting rights were transferred to a trustee, the limitation on irrevocability would not apply, for coupled with such voting rights as are mentioned are agreements concerning sale of the bonds (shares) and for their being held as a unit pending the life of the contract. Without further discussion we think the contract may not be stricken down as being in violation of the above mentioned statute.

So far as need be the frame of the contract has been set out heretofore and will not be repeated. There is no provision in the contract that specifically states that one of the owners of deposited bonds may not bring an action and reduce his bonds to judgment, and if that were the sole matter for consideration we would be impelled to hold, as contended by plaintiff, that the bond being a contract to pay, he had a right to bring action on his bonds. But

as we read and construe the contract, the omission of any provision that would permit or deny any one of the parties from bringing an action on his bonds is not decisive. All of the contract must be examined, what it states as well as what it does not state. The contract does provide a plan for the control of the deposited bonds as a unit, and limits the rights of the parties. All of the third mortgage bonds were due January 1, 1939, and were in default when the contract was made on February 1, 1940. The parties, knowing the bonds were in default, and that any holder was then at liberty to bring an action to protect himself, entered into the contract. We here ignore the provisions of the deed of trust for foreclosure either by a bondholder or by the trustee for we are not advised as to its terms. By the contract in question each party agreed to deposit not only bonds then held by him individually, but also those which he would receive on final settlement of the Herbert C. Wallace estate, to be held in escrow by the named escrow agent, during the fifteen-year period, or a lesser period if so unanimously agreed. The contract specifically provided that neither party, without consent of the other two parties, could sell his bonds to third parties, and the escrow agent was instructed not to release any of the deposited bonds during the period without such consent; and by another provision the escrow agent was directed to hold the bonds for the stated period, unless sooner unanimously terminated, and then to make distribution to the parties. The contract makes it clear the parties intended to pool their interests, and that none could withdraw without consent of the others. This is reinforced by the provisions of the contract covering the event of death or incompetency and by the further provision that rights and obligations under the contract are binding upon the heirs, legatees, personal representatives and assignees, where assignment was permitted, of the parties to the contract. Although the contract is silent on the right of one to bring an action on his bonds, it is clear that each party did deposit his bonds under such circumstances that his ownership and power of disposal were substantially limited. If one be permitted to reduce his bonds to judgment, his status passes from that of bondholder, with accompanying voting rights, to that of judgment creditor with rights pertaining to that status, and the plan for joint control is frustrated. We do not overlook some argument that holders of bonds, other than the contracting parties, may force an action on their bonds, or that in-

action by the trustee under the deed of trust may prejudice them. But these are arguments only. We have noted the trustee is not a party to the contract, and the deed of trust is not before us. We are not now deciding what result might follow in event of an action by another party. We must assume that the trustee will faithfully perform his duties and whatever the situation may be, if the trustee or some other bondholder forces action, the parties to the contract may protect themselves. The contract made for the deposit of bonds in escrow may not have been wise or provident, but there is no claim now that the parties to it were not competent, nor that anyone was overreached, nor that it is illegal, other than that it is an illegal voting trust agreement, a contention not sustained, and that it is an unlawful attempt to vary the statute of limitations, hereafter discussed. We are of the opinion the interveners had a right to insist upon performance of the contract, and that under its terms one of the parties may not, without consent of the others, bring an action on bonds deposited by him, and thus, by indirection, accomplish his withdrawal from the obligations of the contract.

Plaintiff contends the contract is illegal in that it extends the period of the statute of limitations in violation of G. S. 1935, 60-306, *Seventh*. It may be observed the contract was not made with or for the debtor corporation. Neither does it provide for any limitation of a time to sue nor for any extension of such a period. On the contrary, by their joint action, the parties may exercise any right that they as bondholders have, not merely to bring action on the bonds as such, but to foreclose the deed of trust given to secure payment of the bonds. The contract does contain some provision for substitution of present bonds for new bonds, if they should be issued, and that substitution requires unanimous consent, but we discern nothing in it attempting. to fix any extension of time or any date prior to which the trustee under the deed of trust could not bring an action. The plaintiff's contention the contract violates the above provision of the code of civil procedure cannot be sustained.

The trial court's order and ruling that the demurrers be overruled is affirmed.