[No. B020765. Second Dist., Div. Seven. Apr. 24, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
CEDRIC WAYNE SCOTT, Defendant and Appellant.

**COUNSEL**

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, Nancy Gaynor and Kent Barkhurst, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Robert Carl Schneider and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS (Fred), J.**—We hold that *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697] does not prohibit a defendant from being charged with malice-aforethought-murder in violation of Penal Code

section 187 and convicted of first degree felony murder in violation of Penal Code section 189.[1]

## PROCEDURAL AND FACTUAL BACKGROUND

By information appellant[2] was charged with four counts of murder, firearm enhancements (§ 12022, subd. (a)), and special circumstance enhancements (§ 190.2, subd. (a)(3) [multiple murders]). A jury convicted appellant of four counts of first degree murder, found true all firearm and special circumstance enhancements, and after a brief penalty trial, returned a verdict of life without possibility of parole. Appellant was sentenced to state prison for life without possibility of parole.

Since appellant makes no general insufficiency of evidence claim[3] and because the issues are essentially legal, we synopsize the evidence. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

In April 1984 Travis Clark, his common law wife Rebecca Hood, her son Derrick Hood, and a friend, Larry Simmons were living in Mr. Clark's house on 4th Avenue in Los Angeles. Mr. Clark, in charge of a cocaine operation, sold drugs from his fortified residence, a "rock cocaine house." During the last few days of April, Mr. Clark's niece, Marcia Cook, also stayed at his house.

On April 28, in the afternoon, "Petey,"[4] one of Mr. Clark's cocaine sellers, arrived at the house. He identified himself, Mr. Clark authorized his admittance, and someone unlocked the iron-barred front door. Petey was allowed to enter Mr. Clark's bedroom where he repaid money to Mr. Clark, redeemed his Magnum handgun, and left.

Late the next evening, April 29, Petey returned to the house with appellant. Marcia Cook answered the door, informed her uncle, obtained his permission to admit them, unlocked the iron front door, seated appellant in the living room and allowed Petey into Mr. Clark's bedroom. Petey said a friend had a .38-caliber pistol for sale and Mr. Clark said he was interested but would have to see it. Petey said he would return with it. Petey and appellant left.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] His trial was severed from two codefendants.

[3] Appellant does contend the evidence is insufficient to establish intent to kill, a special circumstance requisite. We separately consider this claim.

[4] Albert Egger Scott, appellant's brother and initial codefendant.

About 15 minutes later Marcia Cook again heard a knock on the front door. She answered it and saw Petey and appellant. She told Mr. Clark, and after his approval, unlocked the iron door and began pushing it open when a third person suddenly appeared from the side of the house, put a gun to her head and told her to be quiet. The gun was the one Petey had redeemed the day before.

Petey and the man with the gun entered the house while appellant, who had his hand under his jacket, told Marcia Cook that he had a gun and if she moved she was dead. She didn't believe he had a gun and pushed him over the porch railing and fled.

Some minutes later, both Marcia Cook and a next door neighbor of Mr. Clark heard multiple gunshots in the Clark house.

Larry Simmons was shot twice in the chest. He lay bleeding in the dining room and soon died.

Derrick Hood lay facedown in the hallway, hands above his head, fingers interlaced, fatally shot once in the top of the head.

Travis Clark lay facedown in the master bedroom, hands above his head, fingers partly interlaced, fatally shot once near the top of his head.

Rebecca Hood lay near her husband; she had been shot twice, with each bullet causing two wounds, at least one—entering her brain—fatal.

## CONTENTIONS

Appellant contends:

1. "The first degree murder convictions must be reversed because appellant was tried for first degree felony-murder, an offense codified in Penal Code section 189, while he was charged with a separate offense, murder-with-malice codified in Penal Code section 187."

2. The trial court erred in failing to instruct the jury that to convict appellant of first degree murder they must unanimously agree on the "theory" of first degree murder.

3. The trial court's instructions erroneously allowed the jury to "presume" malice aforethought.

4. "There was insufficient evidence of the intent to kill requisite to the special circumstances allegation."

## Discussion

1. *Appellant contends "the first degree murder convictions must be reversed because appellant was tried for first degree felony murder, an offense codified in Penal Code section 189, while he was charged with a separate offense, murder with malice codified in Penal Code section 187."*

Each of the four counts of murder charged appellant in the same language: "The said . . . Cedric Scott [is] accused . . . of the crime of MURDER, in violation of Section 187 Penal Code, a felony, committed as follows: . . . on or about the 30th day of April, 1984, . . . in the County of Los Angeles, . . . California, did willfully, unlawfully, and with malice aforethought murder [name of victim] . . . ." The charging language made no reference to section 189, to felony murder, nor to any underlying felony such as robbery.

The court instructed on, and the prosecutor argued, both theories of first degree murder: premeditated murder and felony (robbery) murder.

Appellant does not claim that the accusatory pleading violated statutory requirements or prosecutorial custom. Clearly it complied with section 950[5] in providing the title of the action, name of the court, name of the parties, and a statement of the public offense. It also not only complied with section 951[6] but exceeded its requirements by amplifying "murder" with the words "willfully, unlawfully, and with malice aforethought." Further, it satisfied the rudimentary requisites of section 952: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give

[5]The section provides: "The accusatory pleading must contain:

"1. The title of the action, specifying the name of the court to which the same is presented, and the names of the parties;

"2. A statement of the public offense or offenses charged therein."

[6]The section provides:

"An indictment or information may be in substantially the following form: The people of the State of California against A.B. In the superior court of the State of California, in and for the county of _____ The grand jury (or the district attorney) of the county of _____ hereby accuses A.B. of a felony (or misdemeanor), to wit: (giving the name of the crime, as murder, burglary, etc.), in that on or about the __ day of _____ 19__, in the county of _____ , state of California, he (here insert statement of act or omission, as for example, 'murdered C.D.')."

the accused notice of the offense of which he is accused. In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another."

Nor does appellant challenge pre-September 1, 1983, California decisional law that "[a]n accusatory pleading charging murder in the short form prescribed by Penal Code sections 951 and 952, without specifying the degree of murder, adequately apprises an accused of a first degree murder charge [citations] and it has long been settled that under such a charge the accused may be convicted of first degree murder on the theory that the murder was committed in the perpetration of one of the felonies specified in Penal Code section 189 [citations]." (*In re Walker* (1974) 10 Cal.3d 764, 781 [112 Cal.Rptr. 177, 518 P.2d 1129].) In fact appellant concedes that before September 1, 1983, " 'murder' was regarded in California law as a single crime with the elements of: (a) unlawful killing; (b) of a human being; (c) with malice aforethought. In 'murder' prosecutions, every defendant was confronted with a variety of degrees of the crime, lesser included offenses and methods by which the State might prove malice and degree . . . ."

■ What appellant does contend is that on September 1, 1983, *People v. Dillon, supra*, 34 Cal.3d 441 changed the *single* crime of murder into *two separate* crimes of murder. One crime was malice-aforethought-murder, a violation of section 187. The second was felony murder, without malice aforethought, a violation of section 189.

Based upon this premise appellant argues that he either was or may have been *charged* only with malice murder (§ 187) but *convicted* of the separate, uncharged crime of felony murder (§ 189), an act in excess of the court's jurisdiction. (*People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368-369 [173 Cal.Rptr. 453, 627 P.2d 183].)

Appellant's argument has been made before. In *People* v. *Watkins* (1987) 195 Cal.App.3d 258, 265 [240 Cal.Rptr. 626] defendant "contend[ed] that since the case of *People* v. *Dillon* . . . a defendant may no longer be convicted of felony murder, a violation of section 189, when the information charges only murder with malice, a violation of section 187."

*Watkins* rejected the argument. It observed that "[t]he proposition that a defendant may be convicted of felony murder even though the information charges murder with malice can be traced back to *People* v. *Witt* (1915) 170 Cal. 104 [148 P. 928]." (*People* v. *Watkins, supra*, 195 Cal.App.3d at p. 265.)

*Watkins* held that the following *Dillon* language did not overrule *Witt*: "With respect to any homicide resulting from the commission of or attempt

to commit one of the *felonies* listed in the statute, our decisions generally hold section 189 to be not only a degree-fixing device but also a codification of the felony-murder rule: no independent proof of malice is required in such cases, and by operation of the statute the killing is deemed to be first degree murder as a matter of law." (*People* v. *Dillon, supra,* 34 Cal.3d 441, 465.) We agree.

As correctly noted by *Watkins, Dillon* did not purport to "*re*interpret" section 189. (*People* v. *Watkins, supra,* 195 Cal.App.3d at p. 267, italics added.) Impelled by the constitutional challenge of *Mullaney* v. *Wilbur* (1975) 421 U.S. 684 [44 L.Ed.2d 508, 95 S.Ct. 1881] and *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450] (due process requires the state to prove beyond a reasonable doubt each element of the crime charged), *Dillon* merely clarified earlier characterizations[7] of the effect of the felony-murder rule. Rather than "presuming" malice aforethought— a *conclusive* presumption—as some earlier decisions had loosely phrased the effect of the felony-murder rule, *Dillon* made clear the effect of the rule was to *eliminate* malice aforethought. Thus, and in that sense, *Dillon* stated "the two kinds of murder are not the 'same' crimes and malice is not an element of felony murder." (*People* v. *Dillon, supra,* 34 Cal.3d at p. 476, fn. 23.)

But *Dillon* neither stated nor, as appellant incorrectly urges, implied that felony murder, henceforth, was a *different* crime than it had been nor that it was a *new* crime. If, as *Dillon* stated, felony murder was a different "kind" of murder than malice murder (and therefore they were "not the 'same' crimes") it was still *murder*. We have found no suggestion in *Dillon*, and appellant fails to cite any, that this kind of murder, felony murder, codified since 1872, now requires charging language different than that prescribed for 56 years.[8] As *Watkins* holds, "[w]hether murder is committed with malice, or in the context of felony murder, the crime committed is still murder. And while identification of the statute violated is advisable, it is not required. [Citation.] Therefore, an information charging murder is sufficient to charge either a violation of section 187 or section 189." (*People* v. *Watkins, supra,* 195 Cal.App.3d 258, 267.)

---

[7] "In various contexts this court has said, for example, that the felony-murder rule 'presumes' malice (*People* v. *Ketchel* (1969) 71 Cal.2d 635, 642 [79 Cal.Rptr. 92, 456 P.2d 660]), 'ascribes' malice (*People* v. *Washington* (1965) *supra,* 62 Cal.2d 777, 780 [44 Cal.Rptr. 442, 402 P.2d 130]), 'posit[s]' malice (*People* v. *Ireland* (1969) *supra,* 70 Cal.2d 522, 538 [75 Cal.Rptr. 189, 450 P.2d 580, 40 A.L.R.3d 1323]), 'imposes' malice (*People* v. *Phillips* (1966) *supra,* 64 Cal.2d 574, 583, fn. 6 [51 Cal.Rptr. 225, 414 P.2d 353]), or that it results in an 'imputation' of malice (*People* v. *Burton* (1971) 6 Cal.3d 375, 385 [99 Cal.Rptr. 1, 491 P.2d 793], or an 'implication' of malice (*People* v. *Poddar* (1974) *supra,* 10 Cal.3d 750, 755 [111 Cal.Rptr. 910, 518 P.2d 342])." (*People* v. *Dillon, supra,* 34 Cal.3d 441, 473, fn. 20.)

[8] Section 952 and related pleading statutes were substantially amended in 1927.

Although appellant's "*Dillon* argument" has not been directly considered by the California Supreme Court, its pronouncements on related issues are inconsistent with appellant's contention.

■ *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131, 138 [197 Cal.Rptr. 79, 672 P.2d 862] overruled on other grounds in *People* v. *Anderson* (1987) 43 Cal.3d 1104, 1115 [240 Cal.Rptr. 585, 742 P.2d 1306] stated, "the felony-murder rule in California serves two purposes. First, whenever a killing occurs as a direct causal result of the commission or attempt to commit a felony inherently dangerous to human life, the rule classifies the killing as murder instead of manslaughter. [Citations.] It thus dispenses with the need to prove malice aforethought. (*People* v. *Dillon* (1983) 34 Cal.3d 441, 472-476.) Second, whenever the felony is one listed in section 189, the rule classifies the murder as one of the first degree. In this context, felony murder substitutes for proof of premeditation." Justice Mosk, the author of *Dillon*, concurred.

Even more telling is *People* v. *Guerra* (1985) 40 Cal.3d 377 [220 Cal.Rptr. 374, 708 P.2d 1252] where the prosecutor also relied on two separate first degree murder theories: malice aforethought with premeditation and felony (robbery) murder. Guerra contended the trial court erred in not requiring the jury to unanimously agree on their theory of first degree murder. This contention is fundamental to appellant's position that, post-*Dillon*, malice murder and felony murder are separate and distinct crimes. ■ In rejecting this contention, Justice Mosk (*Dillon*'s author) stated, "It is settled, however, that 'in a prosecution for first degree murder it is not necessary that all jurors agree on one or more of several theories proposed by the prosecution; it is sufficient that each juror is convinced beyond a reasonable doubt that the defendant is guilty of first degree murder as that offense is defined by the statute.' [Citation.] Defendant provides no compelling reason or authority that would require us to depart from this rule, and we decline to do so." (*Id.* at p. 386.)

An argument analagous to appellant's "Dillon argument" was made in *People* v. *Thomas* (1987) 43 Cal.3d 818 [239 Cal.Rptr. 307, 740 P.2d 419]. Thomas was charged with " 'the crime of . . . violation of SECTION 192.1 . . .'" and it was alleged he " 'did wilfully, unlawfully, and with/o[ut] malice aforethought kill [the victim]' . . ." (*Id.* at p. 824.) Thomas contended that he was charged with *voluntary* manslaughter and by being convicted of *involuntary* manslaughter was denied his due process right to fair notice of the charges against him.

The California Supreme Court unanimously rejected Thomas's contention. *People* v. *Thomas* made "clear that a valid accusatory pleading need

not specify by number the statute under which the accused is being charged" (43 Cal.3d at p. 826), that specifying the wrong code section may be "immaterial" (*id*. at p. 827), that surplus words are without consequence (*id*. at p. 828), and that even if the accusatory pleading is unclear a defendant must demonstrate prejudice (*id*. at pp. 828-832). Where " '[n]otice of the particular circumstances of the offense is given by . . . the transcript of the evidence before the committing magistrate . . . .' " that notice is "conclusive." (*Id*. at p. 829.)

■    *Thomas* also instructively addressed, although in dictum, the pleading requirements of murder: "However, it has long been the law in this state that an accusatory pleading charging murder need not specify degree or the manner in which the murder was committed. (*In re Walker* (1974) 10 Cal.3d 764, 781 [112 Cal.Rptr. 177, 518 P.2d 1129]; *People* v. *Risenhoover* (1968) 70 Cal.2d 39, 50 [73 Cal.Rptr. 533, 447 P.2d 925], cert. den. *Risenhoover* v. *California* (1969) 396 U.S. 857 [24 L.Ed.2d 108, 90 S.Ct. 123].) Thus, even where the People intend to rely on a felony-murder theory, the underlying felony need not be pleaded in the information. (*Walker, supra*.) Neither is it necessary to specifically plead the charged murder was wilful, deliberate, and premeditated. (*People* v. *Mendez* (1945) 27 Cal.2d 20, 23 [161 P.2d 129].) So long as the information adequately alleges murder, the evidence adduced at the preliminary hearing will adequately inform the defendant of the prosecution's theory regarding the manner and degree of killing. ([*People* v. *Roberts*, (1953)] 40 Cal.2d at p. 486.)" (*People* v. *Thomas, supra*, 43 Cal.3d at p. 829, fn. 5.)

■    Appellant's secondary argument is that even if an accusatory pleading, such as the instant one, *generally* provides notice of felony murder, it fails to do so when "there was *no* evidence of robbery or attempted robbery at the preliminary hearing," "the felony-murder concept was not raised at voir dire," there was "little of such evidence at the trial," and the prosecutor's "belated request" for such jury instructions was objected to by appellant. Appellant relies upon *Sheppard* v. *Rees* (9th Cir. 1990) 909 F.2d 1234.

As *People* v. *Crawford* (1990) 224 Cal.App.3d 1, 7 [273 Cal.Rptr. 472] observed, "the Attorney General [in *Sheppard*] argued its murder pleading practice afforded the defendant adequate notice, but *conceded* the prosecutor's conduct 'affirmatively misled the defendant, denying him an effective opportunity to prepare a defense.' "

*Crawford* not only found *Sheppard* not binding ("[lower federal court decisions are not binding, but are 'persuasive']") (224 Cal.App.3d at p. 8) but inconsistent with *People* v. *Murtishaw* (1981) 29 Cal.3d 733, 751, foot-

note 11 [175 Cal.Rptr. 738, 631 P.2d 446], which is binding. *Crawford* also distinguished *Sheppard* on its facts.

We agree with *Crawford* that *Sheppard* cannot be squared with binding California Supreme Court authority (e.g., *People* v. *Murtishaw, supra,* 29 Cal.3d 733, 751, fn. 11; *People* v. *Thomas, supra,* 43 Cal.3d 818, 829, fn. 5; *People* v. *Witt* (1915) 170 Cal. 104 [148 P. 928]). We also conclude that *Sheppard* is factually distinguishable.

At the preliminary hearing, where appellant was represented by the same two attorneys who represented him at trial, there was substantial evidence of robbery-murder. Marcia Cook testified that shortly before the murders she had seen in the victims' house both a $3,000 or $5,000 check and a .357 Magnum handgun. Detective Lemos testified that after the murders neither item was found in the house. He also testified that although there was narcotics paraphernalia to prepare and package cocaine for sale, there was no cocaine found in the victims' house.

Additionally, prior to trial, the court informed prospective jurors that felony murder might be involved. The court stated, "Go back to the idea of first degree murder. I said that one type is a planned, premeditated, deliberated upon murder.

"Another type of first degree murder is the murder that occurs in the course of certain criminal acts and they are defined in the law. Among those would be a murder that occurs in the course of rape, a murder that occurs in the course of a robbery, and a murder that occurs in the course of a burglary."

No counsel objected to the court's remarks or suggested the remarks were inapplicable to the instant case.

Almost immediately after the trial began, and while the prosecutor was still examining his first witness, the prosecutor expressly stated his intention to rely upon a felony-murder theory. He stated, "It's the People's version of this that, first of all, there was a conspiracy to commit a robbery and there was an attempted robbery, and the fact that there is a—what appears to be a checcbook [*sic*] near his head is of some relevance to show that attempted robbery."

Defense counsel expressed neither objection nor surprise.

During trial there was substantial evidence of robbery (circumstantial evidence that both handguns and narcotics had been stolen). Rather than

detail that evidence we merely quote from page 51 of appellant's opening brief: "The prosecution produced substantial evidence that appellant intended to aid in a robbery."

We conclude that appellant's contention is not well taken.

2. *Appellant contends the trial court erred in failing to instruct the jury that to convict appellant of first degree murder they must unanimously agree on the "theory" of first degree murder.*

■ This contention, based upon the same premise as appellant's first contention, was expressly rejected by the California Supreme Court two years *after Dillon*: " 'in a prosecution for first degree murder it is not necessary that all jurors agree on one or more of several theories proposed by the prosecution; it is sufficient that each juror is convinced beyond a reasonable doubt that the defendant is guilty of first degree murder . . . .' " (*People* v. *Guerra, supra,* 40 Cal.3d 377, 386.)

3. *Appellant contends the trial court's instructions erroneously allowed the jury to "presume" malice aforethought.*

Appellant does not *literally* contend that the trial court instructed the jury they might "presume" malice aforethought. The trial court gave the standard CALJIC instructions on murder (CALJIC No. 8.10 (1983 revision)), malice aforethought (CALJIC No. 8.11 (1983 revision)), deliberate and premeditated murder (CALJIC No. 8.20 (1979 revision)), first degree felony murder (CALJIC No. 8.21), and first degree felony murder aider and abettor (CALJIC No. 8.27 (1984 revision)). Appellant makes no complaint about any of these instructions.

Rather, appellant's contention, a reconfiguration of his "*Dillon* argument," is that by rejecting his earlier arguments we "must read *Guerra* to 'reaffirm' that felony-murder is *not* an offense separate from [malice] murder and that first degree felony murder is codified by section 187." Having to so read *Guerra,* appellant concludes, we have reinserted malice aforethought as an element of felony murder—but allowed the jury to "presume" its presence.

■ As we have earlier explained, we reject appellant's "*Dillon* argument" and find this reconfiguration of it no more persuasive. *Dillon* made clear that malice aforethought is not an element of felony murder. *Guerra* did not retreat from that conclusion. We find no error in the trial court's murder instructions.

4. *Appellant contends "there was insufficient evidence of the intent to kill requisite to the special circumstances allegation."*

As appellant concedes, the trial court anticipated *People* v. *Anderson* (1987) 43 Cal.3d 1104 [240 Cal.Rptr. 585, 742 P.2d 1306] and appropriately instructed the jury that with respect to the special circumstance allegations they must find appellant "intended to aid in a killing."

Appellant contends the record lacks substantial evidence of such intent. In considering this contention we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

A reasonable trier of fact could have found the following. Appellant, Petey, and two other persons planned to rob Travis Clark and to kill him and whomever else was present in his house at the time of the robbery. To effect the plan, Petey redeemed his Magnum handgun from Clark the day before the robbery. On the scheduled robbery day, Petey brought appellant with him to Clark's house 15-30 minutes *before* the robbery. Appellant was thus able to familiarize himself with the interior of the house, while Petey was inside Clark's bedroom, and to note who besides Clark was present. Meanwhile Petey created a ruse, that he would return with a .38-caliber gun for sale, to ensure that he and his accomplices would be readily admitted.

Around midnight, when Petey and appellant returned, they made no effort to hide their identity from Marcia Cook, who had seen them both only a short time ago, from Travis Clark, who of course knew Petey well, or from anyone else inside the residence. As part of the plan, as soon as Marcia Cook had unlocked the iron front door and was pushing it open, the third accomplice suddenly appeared and pointed a gun to Marcia Cook's head, a gun Petey had redeemed the day before.

The perpetrators had determined to kill Clark because they knew he could identify them, he would want revenge, and he would *have* to take revenge to remain a viable cocaine dealer, and he had the *means* to take revenge.

When Larry Simmons appeared in the front room he was fatally shot twice. When Derrick Hood entered the hallway he was ordered to lie face-down with his hands behind his head. He was shot in the head. Travis Clark

was similarly ordered to lie down and similarly shot. When Travis's wife Rebecca entered the house she was shot twice.

The perpetrators removed two of Clark's guns from their holsters, took Mr. Clark's pouch in which he kept another gun, his wallet, and other possessions, and may also have taken cocaine. They then departed through the ajar front door. Two of them entered a waiting blue and white, two-door Monte Carlo and left. The third ran down the street.

We find substantial evidence appellant intended to aid in the killing of the four victims.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent in order to register my concern the formal charge against appellant appears constitutionally insufficient to support a felony-murder conviction. As an additional and independent ground for dissenting, I am concerned there was an absence of any timely, reasonable notice appellant was being prosecuted for this crime. Either of these failures constitutes a denial of appellant's due process rights and requires reversal.

## I. THE FAILURE TO CHARGE DEFENDANT WITH A FELONY OR WITH FELONY MURDER

It is clear a state has the right to establish forms of pleading to be observed in its own courts, provided the guaranties of the federal Constitution involving the protection of life, liberty, and property are obeyed. (*Ex Parte Reggel* (1885) 114 U.S. 642, 651 [29 L.Ed. 250, 253, 5 S.Ct. 1148]; *People* v. *Covington* (1934) 1 Cal.2d 316 [34 P.2d 1019]; *People* v. *Robinson* (1930) 107 Cal.App. 211 [290 P. 470].) Thus, the California Legislature is free to charge a defendant of a crime in the "short form," without technical averments, in "substantially" the language of the *Penal Code*, and meet the sufficiency of pleading standard necessary to pass constitutional, and particularly due process, concerns (*People* v. *Quinn* (1949) 94 Cal.App.2d 112 [210 P.2d 280]; *People* v. *O'Neal* (1934) 2 Cal.App.2d 551 [38 P.2d 430], cert. den. 295 U.S. 731 [79 L.Ed. 1680, 55 S.Ct. 646]).

Counterbalanced against the state's freedom to interpose its own pleading standards, however, is the constitutional requisite that the pleading

adequately advise the defendant of the nature and cause of the charges against him. (U.S. Const., Amends. VI, XIV; *Rogers* v. *Peck* (1905) 199 U.S. 425 [50 L.Ed. 256, 26 S.Ct. 87]; *Garland* v. *Washington* (1914) 232 U.S. 642 [58 L.Ed. 772, 34 S.Ct. 456].) Notions of substantial justice underlie this express mandate of notice. Ultimately, the advisement of charges ensures defendants will have a reasonable opportunity to prepare and present their defenses and not be taken by surprise by evidence offered at trial (*In re Hess* (1955) 45 Cal.2d 171 [288 P.2d 5]; *In re Oliver* (1948) 333 U.S. 257, 273 [92 L.Ed. 682, 694, 68 S.Ct. 499]).

The constitutional necessity of notice was aptly set forth in *People* v. *Jones* (1990) 51 Cal.3d 294 [270 Cal.Rptr. 611, 792 P.2d 643]. There, the California Supreme Court elucidated these concepts by stating: "The 'preeminent' due process principle is that one accused of a crime must be 'informed of the nature and cause of the accusation.' (U.S. Const., Amend. VI.) Due process of law requires that an accused be advised of the charges against him so that he has a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial. (*People* v. *Thomas* (1987) 43 Cal.3d 818, 823 [239 Cal.Rptr. 307, 740 P.2d 419], and cases cited.) [¶] Thus, the right to defend has two related components, namely, the right to *notice* of the charges, and the right *to present a defense* to those charges." (*Id.* at p. 317.)

The People's argument that appellant received the constitutionally mandated notice of the felony-murder charge in this action, despite the absence of either a charge of felony murder or an underlying felony, is twofold. First, relying on *People* v. *Watkins* (1987) 195 Cal.App.3d 258 [240 Cal.Rptr. 627], the People assert that the *Watkins* reasoning, which is based upon its own interpretation of *People* v. *Witt* (1915) 170 Cal. 104 [148 P. 928], supports the proposition a defendant may be convicted of felony murder when the information only charges murder with malice.

But *Watkins* erroneously interprets, and unconstitutionally expands the *Witt* holding. The *Witt* decision is limited. It determined only that the trial court did not err in instructing the jury that where the killing is done in the perpetration or attempt to perpetrate one of the felonies specified in section 189 of the *Penal Code*, the jury has no option but to find the killing to be murder in the first degree. *Witt* is necessarily premised upon an *assumption* the defendant was placed on notice of the charge against him. Therefore, it did not (and, in fact, could not) decide whether the failure to charge or notify defendant would preclude a trial judge from instructing, and, therefore, convicting, as to that count. Yet, *Watkins* so holds.

The instant case would be a different one if the People had initially charged appellant with the underlying felony and with malice aforethought

murder without charging felony murder, as the prosecution did in *Witt*. Given that factual setting, appellant would be on notice as to a possible charge of felony murder.[1] But here, neither robbery, nor another underlying felony, nor felony murder was ever charged, despite ultimate prosecution and conviction for the crime of felony murder. Appellant therefore was deprived of his constitutional right to be formally notified of the felony-murder charge, and of the ability to adequately defend against it.

The prosecution attempts to remedy this flaw by coupling *Witt/Watkins* with the decision in *People* v. *Dillon, supra,* 34 Cal.3d 441. They argue, and the majority holds, that *Dillon* does not attempt to characterize felony murder and malice aforethought murder as two separate crimes. Therefore, because of the purported identity of these two crimes, appellant was sufficiently on notice of the felony-murder charge despite its absence in the information.

But the language of the *Dillon* decision suggests otherwise. The court noted: ". . . (T)he *two kinds* of first degree murder in this state *differ in a fundamental respect*: in the case of deliberate and premeditated murder with malice aforethought, the defendant's state of mind with respect to the homicide is all-important and must be proved beyond a reasonable doubt; in the case of first degree felony murder it is entirely irrelevant and need not be proven at all." (34 Cal.3d at pp. 476-477, italics added.) Thus, malice is no longer presumed; it is simply not an element of the crime of felony murder. Meanwhile, in felony murder the prosecution must prove an element not required for malice aforethought murder, i.e., that the murder arose out of the commission of a felony of a certain sort.

The constitutional challenge the Supreme Court faced in *Dillon* was based upon the holding set forth in *In re Winship* (1970) 397 U.S. 358, 364 [25 L.Ed.2d 368, 375, 90 S.Ct. 1068]. *Winship* ruled that an accused is protected against conviction "except upon proof of every fact necessary to constitute the crime with which he is charged." It held no element of a

---

[1] Assuming *Watkins* were deemed to have properly construed the *Witt* decision, I question the continued viability of that rationale after *People* v. *Dillon* (1983) 34 Cal.3d 441 [194 Cal.Rptr. 390, 668 P.2d 697]. That rationale is based on a line of cases dating back to *People* v. *Milton* (1904) 145 Cal. 169 [78 P. 549], which held there was only one type of murder be-cause the malice aforethought element of the crime was "assumed" in felony-murder prose-cutions. Accordingly, since there was only one type of murder with identical elements a "malice aforethought murder" charge sufficed for a "felony murder" conviction. However, as explained below, *Dillon* changed all that. In order to save the felony-murder doctrine from a constitutional attack that it conclusively presumed an element of the crime, i.e., malice afore-thought, the Supreme Court held there were two distinct crimes—one requiring malice and the other not requiring malice but only the involvement in a certain range of felonies. In so doing, it removed the underpinning for *Watkins* and for the *Watkins* court's interpretation of *Witt*.

crime can be "presumed." In order to comply with this constitutional mandate, the *Dillon* court determined malice was *not* an element of felony murder, and, in doing so, necessarily destroyed the *presumption* of malice created by and relied on in *Witt* and its progeny. *Winship*, and *Dillon's* rationale for avoiding it, further support the principle that felony murder and malice aforethought murder are separate and distinct crimes. To find otherwise would be constitutionally impermissible.

While *Dillon* correctly suggests felony murder and malice aforethought murder can both be murder in the first degree, their similiarity ceases there. As stated in *Dillon*, the two crimes are fundamentally different: malice aforethought murder requires an examination of defendant's state of mind for the presence of malice, felony murder does not.

Neither *Dillon* nor *Witt* nor *Watkins*, then, stands for the proposition that notice is given of potential liability for another crime where, as here, the crimes instructed on contain an element different from that included in the crime charged. Because of the elemental differences between malice aforethought murder and felony murder, a defendant must necessarily modify the position he takes with regard to defenses interposed, witnesses called, questions asked, objections made and overall posturing of his case. Thus, he will assuredly be prejudiced by the absence of a charge in the information notifying him as to which of these two distinct crimes the prosecution intends to pursue. Just as the prosecution would not present a malice aforethought murder charge to the jury in the same fashion as a felony murder, neither would defendant present his defense in the same way. Deprived of adequate notice, a defendant will be forced to "shoot from the hip," and, as such, will be denied the opportunity to present his best defense. This result is not only intrinsically unfair, but as discussed above, clearly unconstitutional.

## II. THE FAILURE TO PROVIDE TIMELY, ACTUAL NOTICE OF THE FELONY-MURDER CHARGE

As a second and independent reason for dissenting in this case, I am concerned the prosecution gave untimely actual notice it was intending to attempt to convict appellant of felony murder. Even if the failure to charge felony murder in the information did not deny appellant due process, the failure to apprise him in any way of the intent to base liability on that crime—rather than malice aforethought murder—until the trial itself deprived him of the opportunity to prepare a defense to this entirely different basis of liability. As pointed out in *Sheppard* v. *Rees* (9th Cir. 1989) 909 F.2d 1234, error of this nature is so fundamental as to be reversible per se.

While *Sheppard* v. *Rees* is not controlling law in this jurisdiction, it is entitled to great weight (*Central Bank* v. *Superior Court of Sacramento County* (1973) 30 Cal.App.3d 962 [106 Cal.Rptr. 912]). I find it persuasive as well, particularly given the similarity in the timing of notice.

In *Sheppard*, as here, defendant was charged only with one count of murder under Penal Code section 187. At no time during pretrial proceedings was the felony-murder allegation raised, and it was not until a request for jury instructions was made that defendant became aware of the state's reliance on that crime. Despite defendant's vehement objection, the jury was instructed on felony murder. The defendant was ultimately convicted of murder in the first degree by way of a general verdict.

The defendant's argument in *Sheppard* was similar to the one raised at bar, that is, because neither felony murder nor an underlying felony was charged, he did not receive adequate notice to prepare a proper defense to felony murder.

The main question before the *Sheppard* court was not whether there was adequate notice, since it was clear, and the state ultimately conceded, that there was not. *Sheppard* premised its finding on that threshold issue on the decision in *Gray* v. *Raines* (9th Cir. 1981) 662 F.2d 569, 571. In that case the Ninth Circuit had held "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence . . . ." (Quoting *In re Oliver* (1948) 333 U.S. 257, 273 [92 L.Ed. 682, 694, 68 S.Ct. 499].) The failure to give actual notice of the intent to seek to convict defendant of felony murder until late in the trial deprived Sheppard of that basic right.

The *Sheppard* court focused most of its attention on the question of whether the harmless error rule applied to this denial of due process. It held that despite *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065], the harmless error rule did not apply, since the constitutional error in *Sheppard* was of a fundamental nature. The court stated:

"A trial cannot be fair unless the nature of the charges are adequately made known to him or her in a timely fashion. . . . Here, the prosecutor 'ambushed' the defense with a theory of culpability after the evidence was already in (and) after both sides had rested . . . . This new theory then appeared in the form of unexpected jury instructions permitting the jury to convict on a theory that was neither subject to adversarial testing, nor

defined in advance of the proceeding. [¶] Moreover, the right to counsel is directly implicated. That right is next to meaningless unless counsel knows and has a satisfactory opportunity to respond to the charges against which he or she must defend. Sheppard's counsel had no occasion to defend against a felony-murder theory during the evidentiary hearing phase of the trial. This error affected the composition of the record. . . . Defense counsel would have added an evidentiary dimension to his defense designed to meet the felony-murder theory had he known at the outset what he was up against." (*Sheppard* v. *Rees, supra,* 909 F.2d at p. 1237.)

*Sheppard* is precisely on point, and its rationale is even more persuasive here since, as appellant suggests, the case at bar gave even less notice of a felony-murder charge than did the facts in *Sheppard*. Here, there was virtually no evidence of robbery at appellant's preliminary hearing, and very weak evidence of robbery brought out at trial that the victim's guns were missing. Further, the prosecution first expressly mentioned its reliance upon a felony-murder charge *after its initial jury instruction discussion with appellant's counsel and the court*. This mention came after both sides had rested and far too late for appellant to counter the charge before the jury. It is precisely this sort of "back door" notice against which the due process clause protects.

The People attempt to claim appellant had notice of the intent to charge felony murder early in the trial proceedings because the prosecutor mentioned the definition of felony murder during voir dire of the jury. However, read in context it is clear the prosecutor was only mentioning felony murder in the course of explaining the concept of malice aforethought. A reasonable defendant or reasonable defense lawyer listening to this explanation during voir dire would not anticipate the prosecution was planning on seeking a conviction for felony murder instead of or in addition to malice aforethought murder. (This even assumes that notice of such a fundamental shift in charges which comes as late as jury voir dire provides a defendant with his due process right to *prepare* and present a defense to the new offense.)

Contrary to the majority's representations, when the prosecution does not notify the defendant of a charge until immediately before trial, evidence supplied at trial of that charge will not, post facto, serve as notification. (*In re Hess* (1955) 45 Cal.2d 171 [288 P.2d 5]; *In re Carlos S.* (1979) 94 Cal.App.3d 377, 380 [156 Cal.Rptr. 442], and cases cited therein.) In any event, because of the prosecution's failure to notify defendant of the felony-murder charge until late in the trial, defendant was misled to his prejudice and prevented from preparing an effective defense (*People* v. *Lohbauer* (1981) 29 Cal.3d 364, 370 [173 Cal.Rptr. 453, 627 P.2d 183]). He was, therefore, unconstitutionally deprived of a fair trial.

For the reasons discussed above, and because error of this fundamental nature cannot be harmless (*Sheppard* v. *Rees*, *supra*, 909 F.2d 1234), I would reverse the conviction.

Appellant's petition for review by the Supreme Court was denied August 1, 1991. Mosk, J., was of the opinion that the petition should be granted.