Curtis Lee MORRISON, Petitioner–Appellant,

v.

Wayne ESTELLE, Respondent–Appellee.

No. 92–15041.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 21, 1992[1].

Decided Dec. 3, 1992.

---

**1.** The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

Curtis Lee Morrison, pro per.

Gerald A. Engler, Deputy Atty. Gen., San Francisco, CA, for respondent-appellee.

**2.** The Honorable John S. Rhoades, Sr., United States District Judge for the Southern District of

Before: KOZINSKI and THOMPSON, Circuit Judges, and RHOADES, District Judge.[2]

RHOADES, District Judge:

Curtis Lee Morrison appeals the district court's dismissal of his habeas corpus petition, brought under 28 U.S.C. § 2254. Morrison claims ineffective assistance of counsel on direct appeal because his attorney failed to argue, *inter alia*, inadequate notice of a felony-murder charge. We affirm the district court's dismissal.

BACKGROUND

On April 21, 1973, Morrison and his nephew were driving on Highway Four in a pickup truck when the drive shaft of the truck broke and the vehicle coasted to a stop. While his nephew left to get help, Morrison tried to remove the truck's U-bolts in preparation for installing a new drive shaft. Martinez Police Officer Thomas Tarantino stopped by the side of the highway to see if Morrison needed help.

Several witnesses testified as to what happened after Officer Tarantino stopped to help Morrison. After an initial conversation, Officer Tarantino frisked Morrison. The two men were next seen wrestling on the ground, after which Morrison threw Officer Tarantino onto the highway. Sylvia Young testified that she saw Morrison holding what appeared to be a police service revolver. Cheryl Balsdon testified that Morrison waived a gun in the air and pointed it at the officer's head. William Boydston saw the officer and Morrison struggling, heard three shots, and saw the officer fall. This witness saw the officer stand and further struggle with Morrison until the officer fell again. Boydston heard one more shot.

Officer Tarantino died at the hospital from gunshot wounds to his head and stomach. The officer's revolver was found on a hillside at the scene. The revolver contained two unfired bullets and four cartridge cases.

California, sitting by designation.

Morrison's driver's license was found in the officer's uniform shirt pocket, and Morrison's .22 caliber gun was found in the officer's right front pants pocket. Officer Tarantino had a habit of putting the license of a person in custody in his shirt pocket and of putting any evidence taken by him in his right front pants pocket. Morrison was an ex-felon on parole.

On May 10, 1973, a grand jury indicted Morrison for one count of murder under California Penal Code Section 187(a), one count of assault with a deadly weapon on a peace officer under California Penal Code Section 245(b), and two counts of possession of a firearm by an ex-felon under California Penal Code Section 12021.

At the jury instructions conference for Morrison's trial, the trial court indicated that it would give instructions on a robbery felony-murder theory as well as a premeditation theory. It did so, and on March 11, 1974, Morrison was convicted of first degree murder and all other charges in the indictment. Morrison was sentenced to seven years to life, the term then prescribed by California law for first degree murder. *See* Cal.Penal Code § 190 (West 1970) (amended 1988); Cal.Penal Code § 3046 (West 1982). The trial court stayed sentencing on the remaining counts.

Morrison's conviction was affirmed on direct appeal. The California Supreme Court denied his petition for habeas relief. On October 4, 1990, Morrison filed a petition for writ of habeas corpus in federal court and on December 2, 1991, the district court denied Morrison's petition.

Pursuant to 28 U.S.C. § 2253, this Court has jurisdiction to review, on appeal, the final order of a district judge in a habeas corpus proceeding within the circuit. The district court issued a certificate of probable cause on December 18, 1991.

## DISCUSSION

■ Morrison raises a claim of ineffective assistance of counsel for his appellate attorney's failure to argue on direct appeal that he did not have adequate notice of a felony-murder charge. The standard for measuring a claim of ineffective assistance of appellate counsel is a two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Defendants must prove that their counsel's performance fell below an objective standard of reasonableness and, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 688, 694, 104 S.Ct. at 2065, 2068; *see Miller v. Keeney,* 882 F.2d 1428, 1433–1434 (9th Cir.1989). Morrison claims violation of his constitutional right to adequate notice of the charges against him because his indictment did not list either a felony-murder or an underlying robbery charge and, he contends, the prosecutor did not present evidence at trial of robbery or felony-murder.

### A. Adequacy of Notice from the Indictment

■ Morrison contends that the state was constitutionally required, under the Sixth and Fourteenth Amendments, to indict him for felony-murder before the trial judge could instruct the jury on that theory. In *Sheppard v. Rees,* 909 F.2d 1234, 1236 n. 2 (9th Cir.1989), however, we indicated that constitutionally adequate notice of a felony-murder charge could be provided to a defendant by means other than the charging document. As discussed below, Morrison received adequate notice during his trial. Thus, we do not reach the question whether, as California courts have held, a charge of murder, without a specific charge of felony-murder or robbery in the charging document, provides constitutionally adequate notice to defendants of the charges against them, absent any other notice during the proceedings. *See People v. Gallego,* 52 Cal.3d 115, 276 Cal.Rptr. 679, 717, 802 P.2d 169, 207 (1990) ("[W]e have long held that a pleading charging murder adequately notifies a defendant of the possibility of conviction of first degree murder on a felony-murder theory."), *cert. denied,* —— U.S. ——, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991); *People v. Murtishaw,* 29 Cal.3d 733, 175 Cal.Rptr. 738, 747 n. 11, 631 P.2d 446, 455 n. 11 (1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 464 (1982); *In re Walker,* 10 Cal.3d 764, 112

Cal.Rptr. 177, 187–88, 518 P.2d 1129, 1139–40 (1974); *People v. Witt*, 170 Cal. 104, 148 P. 928, 929 (1915);[3] *Usher v. Gomez*, 775 F.Supp. 1308, 1311–12 (N.D.Cal.1991), *aff'd mem. sub nom. Usher v. Vasquez*, 974 F.2d 1344 (9th Cir.1992) (indicating in dicta that under *Schad v. Arizona*, — U.S. —, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), the question of the constitutionality of California's "short form" murder charging practice would be resolved in favor of the state, but holding that *Sheppard* was satisfied by notice of the felony-murder charge given to the defendant during the proceedings).

### B. Adequacy of Notice from the Proceedings

Morrison claims inadequate notice based on the specific facts of his trial, relying on *Sheppard v. Rees*, 909 F.2d 1234, 1236 (9th Cir.1989), a case in which the state conceded that it ambushed the defendant with a charge of felony-murder without adequate notice.[4] At no time during the *Sheppard* pretrial proceedings, opening statements, taking of testimony, or initial instructions conference did the prosecutor raise the theory of felony-murder, directly or indirectly. *Id.* at 1235. On the morning after the jury instructions conference, the prosecutor, for the first time, requested robbery and felony-murder instructions. *Id.* The court gave the instructions, and the defendant was convicted of first degree murder. *Id.* at 1236. Because the state conceded that the defendant was denied adequate notice, the court had only one issue to decide: whether the violation of the defendant's right to adequate notice was subject to the harmless-error rule. *Id.* at 1236–37. The court held that the defendant was denied his fundamental right to a fair trial by lack of notice. *Id* at 1238.

The *Sheppard* court did not rule on the constitutionality of California's murder pleading practice.[5]

■ The case at bar does not fall under the narrow ruling of *Sheppard*. *See People v. Scott*, 229 Cal.App.3d 707, 280 Cal. Rptr. 274 (1991), *cert. denied*, — U.S. —, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992); *People v. Gallego*, 52 Cal.3d 115, 276 Cal.Rptr. 679, 802 P.2d 169 (1990), *cert. denied*, — U.S. —, 112 S.Ct. 337, 116 L.Ed.2d 277 (1991). In *Gallego*, the prosecutor submitted felony-murder instructions at the initial instructions conference and the court found that the prosecutor avoided "the 'ambush' situation faced by the defendant in *Sheppard*." *Gallego*, 276 Cal.Rptr. at 717, 802 P.2d at 207. In *Sheppard*, the prosecutor at no time during the proceedings mentioned a theory of robbery or felony-murder. *Sheppard*, 909 F.2d at 1235. At Morrison's trial, the prosecutor requested felony-murder instructions at the initial instructions conference and Morrison's counsel had two days in which to prepare a closing argument. No ambush occurred at Morrison's trial.

Morrison was also given adequate notice of a felony-murder theory from the testimony. In *Scott*, 280 Cal.Rptr. at 280, the prosecutor presented substantial evidence of robbery that provided the defendant with adequate notice that the prosecutor might rely on a robbery felony-murder theory. In distinguishing *Sheppard* from *Scott* and *Gallego*, the California courts have limited the application of *Sheppard* strictly to its facts. *See People v. Crawford*, 224 Cal.App.3d 1, 273 Cal.Rptr. 472, 475–76 (1990).

■ Identical to the prosecutor in *Scott*, the prosecutor in Morrison's case provided notice of a felony-murder theory by presenting sufficient evidence of appellant's intent to commit robbery. Morrison's prosecutor presented evidence that the police

---

3. The *Witt* decision has not been abrogated by later California authority. The decision in *People v. Ricks*, 198 Cal.App.3d 1266, 244 Cal.Rptr. 696 (1988), was withdrawn from official publication by the California Supreme Court.

4. While Morrison disputes the adequacy of the notice he received at trial, his habeas claim is that his appellate counsel should have raised this issue. Resolving the ineffective assistance

claim necessarily requires an examination of whether Morrison received constitutionally adequate notice at his trial.

5. The court's previous ruling in *Sheppard v. Rees*, reported at 883 F.2d 795 (9th Cir.1989) was amended in its entirety by the opinion reported at 909 F.2d 1234 (9th Cir.1989).

officer took appellant's driver's license and .22 caliber gun and placed them in his shirt pocket and right pants pocket, respectively. The prosecutor presented evidence that Morrison was an ex-felon on parole who was not permitted to carry a gun. Sylvia Young testified that Morrison was holding what looked like a police service revolver. From this evidence, it is reasonable to infer Morrison's intent to take back his license and his .22 caliber gun and Morrison's intent to rob the officer by taking the officer's revolver. Under the court's holding in *Scott,* the evidence of robbery gave Morrison constitutionally adequate notice of a felony-murder theory. *Scott,* 280 Cal.Rptr. at 280.

■ Because Morrison's appellate counsel would not have been successful in arguing inadequate notice of a felony-murder charge, Morrison does not sustain his burden of proving ineffective assistance of counsel through the two-prong test set forth in *Strickland. See Miller,* 882 F.2d at 1434 & n. 10.

## C. Appellant's Remaining Claims

Morrison presents additional claims that were properly dismissed by the district court. Morrison fails to establish grounds for relief on his other claims of ineffective assistance of counsel, because he has not demonstrated how the introduction of the felony-murder instruction or the prosecutor's comments violated his constitutional rights. Absent a constitutional violation, Morrison's counsel had no reasonable likelihood of success in arguing these issues.

AFFIRMED.