**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

PETE CARL ROGOVICH,
     *Petitioner-Appellant,*

v.

CHARLES L. RYAN,
     *Respondent-Appellee.*

No. 08-99015

D.C. No.
2:00-CV-01896-
ROS

OPINION

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, Chief District Judge, Presiding

Argued and Submitted
April 18, 2012—San Francisco, California

Filed September 18, 2012

Before: Mary M. Schroeder, Diarmuid F. O'Scannlain, and
Susan P. Graber, Circuit Judges.

Opinion by Judge Schroeder

**COUNSEL**

Sarah Stone, Arizona Federal Public Defender, Phoenix, Arizona, for the petitioner-appellant.

Julie Done, Assistant Attorney General, Phoenix, Arizona, for the respondent-appellee.

**OPINION**

SCHROEDER, Circuit Judge:

Pete Carl Rogovich was convicted by an Arizona jury and sentenced to death for a 1992 killing spree in a Phoenix trailer

park. His only defense at trial was insanity. He appeals the district court's denial of habeas relief on three principal claims, each of which we have certified for appeal. First, he claims that the state trial court should not have permitted his counsel to present an insanity defense without first establishing on the record Rogovich's consent to the defense. Second, he claims that his counsel on direct appeal was ineffective in failing to challenge the use of Arizona's aggravating sentencing factor for a homicide involving multiple victims. Third, he claims that his counsel on direct appeal was ineffective in failing to challenge the prosecutor's closing arguments. Reviewing de novo, *Robinson v. Schriro*, 595 F.3d 1086, 1099 (9th Cir. 2010), we affirm the district court's denial of habeas relief.

The Arizona Supreme Court denied Rogovich's first claim on direct appeal. *See State v. Rogovich*, 932 P.2d 794 (Ariz. 1997). After the state courts denied post-conviction relief ("PCR") on his other claims, Rogovich filed this petition for habeas corpus in federal district court. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, a federal habeas petitioner whose claim has been adjudicated on the merits in state court must establish that the state court's adjudication was unreasonable. For such claims, AEDPA permits relief only when the adjudication:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d).

Rogovich cannot meet this heavy burden under AEDPA. On his first claim, there is no clearly established federal law requiring the defendant to consent on the record to an insanity defense. On his second claim, the state PCR court reasonably concluded Rogovich's appellate counsel was not ineffective for failing to challenge the multiple-victim aggravating factor. Rogovich identifies nothing that counsel could have argued to challenge the factor, and the state supreme court independently reviewed the factor's applicability. Rogovich thus could not establish prejudice. On his third claim, the state PCR court reasonably concluded that appellate counsel was not ineffective for failing to challenge the prosecutor's closing statements. There was no prosecutorial misconduct that could have been challenged successfully under federal or state law.

Rogovich contends that the district court improperly denied evidentiary hearings and expansion of the record on the three claims that we have certified for appeal. As the state courts adjudicated each of those three claims on the merits, the district court properly denied the request. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *Schad v. Ryan*, 671 F.3d 708, 722 (9th Cir. 2011) (per curiam), petition for cert. filed, ___ U.S.L.W. ___ (U.S. July 27, 2012) (No. 12-5534).

Rogovich seeks a certificate of appealability on an uncertified claim, alleging that the state violated his due process rights by failing to collect biological evidence at the time of his arrest, when police captured him with beer in his vehicle. He asserts that the biological evidence might have established he was intoxicated at that time, which was hours after the killings. We deny the certificate of appealability because Rogovich has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

## FACTUAL BACKGROUND

The facts of Rogovich's crimes are undisputed. The Arizona Supreme Court described them well in its opinion:

On Sunday, March 15, 1992, at 8:30 a.m., a maintenance man saw Rogovich park his car in the lot of his central Phoenix apartment complex. On the way to his apartment, Rogovich spoke to the maintenance man, telling him he was upset with his girlfriend and was going to get even with her. Rogovich then went to his second-floor apartment.

At about 8:45 a.m., a customer entered a Super Stop Market located near Rogovich's apartment and found the body of the clerk, Tekleberhan Manna, a 24-year-old Ethiopian immigrant. Manna sustained a fatal gunshot wound to his right eye, fired from within two feet, causing instantaneous death. No money or merchandise had been taken from the store.

Around 1:00 p.m. the same day, Rogovich left his apartment with a gun in his hand and began randomly firing. At that time, Tony Madrid and Pamela Rodgers were leaving the apartment complex by car. One of Rogovich's shots hit a rear tire. Madrid thought the car was backfiring, and when he and Rodgers momentarily got out of the car to inspect, Rogovich fired at them but missed. Rogovich then ran to the south side of the complex and jumped the fence separating the apartment complex from the neighboring trailer park.

In the trailer park, Rogovich went on what can only be described as a homicidal rampage, leaving three victims in his wake. In the laundry room, 62-year-old Phyllis Mancuso was shot once through her right cheek and neck and died within minutes. In her driveway, 48-year-old Rebecca Carreon was shot once in the back and died from loss of blood within a few minutes. Finally, in her trailer 83-year-old

Marie Pendergast was shot twice in the abdomen and also died from blood loss.

Rogovich was last seen running into an open field adjacent to the trailer park. Some time later, he appeared at a restaurant parking lot where disc jockey Kelly Urich was doing promotional work for Y-95, a Phoenix radio station. Rogovich took the distinctive Y-95 van from Urich at gunpoint and drove off.

Rogovich was next seen at a convenience store in Goodyear. Inside the store, he grabbed a couple of 12-packs of beer from the cooler and approached the counter. At the counter, he put down his gun and demanded in a quiet voice, "Give me some money." The cashier handed him about $45. Rogovich took the money, casually walked out to the Y-95 van, and drove off.

At about 5:00 p.m. Goodyear police, responding to a call concerning the convenience store robbery, spotted the Y-95 van and pursued. Although Rogovich led them on a lengthy chase at speeds ranging from 50 to over 100 miles per hour, police were finally able to stop him at a roadblock.

In interviews with the police, Rogovich admitted to committing all of the various offenses, including the murder of Tekleberhan Manna. He stated, "I did it. I know it was wrong. I know I'll burn in hell." When asked if he was sorry, Rogovich replied, "Of course, I'm sorry. It was wrong. I know it, but I just snapped. I was so angry. I just couldn't stop. I was full of anger." Rogovich told a detective that the death of his stepfather in 1986 and the recent breakup with his girlfriend really bothered him.

On March 26, 1992, the State charged Rogovich with four counts of first-degree murder, two counts of aggravated assault, two counts of armed robbery, and one count of unlawful flight from a law enforcement vehicle. The State also filed a notice of intent to seek the death penalty.

*Rogovich*, 932 P.2d at 796-97 (heading omitted).

Rogovich was tried before a jury on all the charges in 1994. He presented a defense of insanity. His court-appointed counsel made the decision to present that defense a full year before trial, after a number of evaluations of Rogovich's competency to stand trial. When the state first raised the issue of Rogovich's mental health and competency, Rogovich's counsel sought a competency evaluation under Arizona Rule of Criminal Procedure 11. The court initially denied a full competency evaluation, but defense counsel then obtained an independent psychiatric evaluation from Dr. Paul Bindelglas, who concluded Rogovich suffered from psychosis and paranoia, and was incompetent to stand trial. With Rogovich present at the competency hearing, his counsel told the court that he had been "unable to communicate" with Rogovich, and had not yet decided whether to present an insanity defense. The court ordered a full evaluation of Rogovich's competency to stand trial, stating that if counsel decided to present an insanity defense the court would also permit the doctors to evaluate Rogovich for his mental state at the time of the crimes.

The competency reports included the evaluations of two doctors, Bindelglas and Michael Bayless. On the basis of the reports the trial court ruled, in January 1993, that Rogovich was competent to stand trial.

In March 1993, at a motions hearing, Rogovich was present when his counsel stated that there was a possibility of an insanity defense. Rogovich's counsel confirmed, in April

1993, that he might present an insanity defense. Rogovich was also present when his counsel discussed the insanity defense at two subsequent pretrial hearings. Rogovich never, during any of these appearances, voiced any misgivings or objections to the intended defense. The court then appointed experts who examined Rogovich for his mental state at the time of the crimes.

Trial proceedings began with voir dire conducted on May 10-11, 1994. Rogovich waived his presence at voir dire through his counsel, who told the court that the waiver "probably will make the process more effective." Counsel informed prospective jurors that Rogovich had admitted to the crimes and that the defense would be insanity.

Trial began on May 12, 1994, and lasted seven days. Rogovich was present throughout. During opening statements, defense counsel did not deny or disguise Rogovich's commission of the killings and other crimes. Defense counsel confirmed that Rogovich committed "four shootings, that he did the two aggravated assaults, that he did the two robberies, and that he fled from the police." The state's case-in-chief presented eyewitness testimony from all of the crime scenes: Rogovich's apartment complex, the trailer park, the radio station's van, and the convenience stores. Witnesses testified they saw Rogovich with a gun at the crime scenes. Police witnesses also testified concerning Rogovich's arrest and subsequent admission while in custody that he had committed all the crimes. The trial court denied the defense motion for judgment of acquittal.

The burden then shifted to Rogovich to establish insanity by clear and convincing evidence. *See* Ariz. Rev. Stat. § 13-502(A) (1983). Rogovich presented testimony from two mental health experts: Dr. Bindelglas, who had examined him both for competence and later for his mental state, and Dr. Marc Walter, a clinical neuropsychologist who had also evaluated Rogovich's mental state at the time the crimes were

committed. On the basis of his meetings with Rogovich, Bindelglas testified the defendant suffered from paranoid schizophrenia, with symptoms including hallucinations, delusions, and paranoia. In the later meetings with Bindelglas, Rogovich still had no recollection of the crimes, and tried to rationalize them as a function of drug abuse, even suggesting that a cigarette he had smoked the night before the killings might have been laced with phencyclidine (PCP). Walter testified that Rogovich's results on clinical tests, such as the Minnesota Multiphasic Personality Inventory, were consistent with a diagnosis of paranoid schizophrenia. Walter also expressed the opinion that Rogovich did not know right from wrong at the time of the offenses.

To rebut Rogovich's insanity defense, the state presented testimony from two other mental health professionals who had evaluated Rogovich. Dr. Alexander Don, a psychiatrist, testified that Rogovich had a prior history of substance abuse and hallucinations. Although he diagnosed Rogovich as having a personality disorder with "schizoid, paranoid, and void like characteristics," Don testified that he concluded Rogovich was malingering because he had been relatively high functioning before the murders. The state's other expert was Dr. Bayless, the psychologist who had prepared one of the two reports for Rogovich's Rule 11 competency evaluation. Bayless concluded that Rogovich suffered from no organic psychosis and that his behavior at the time of the crimes could have resulted from PCP intoxication.

The prosecutor's closing argument with respect to the insanity defense is the basis for one of the claims of ineffective assistance of appellate counsel. The argument emphasized the difference between a verdict of "guilty," which the state sought, and a verdict of "Not guilty by reason of insanity," which the defense sought. The prosecutor said: "not guilty by reason of insanity is still not guilty. That's what it means, not guilty." He later told the jury: "They are asking

you to find this man not guilty by reason of insanity. That's not guilty for taking away four of our citizens."

Defense counsel objected on the ground that the argument was misleading and sought a curative instruction that a "not guilty by reason of insanity" verdict would not set Rogovich free. The court overruled the objection and denied the curative instruction, concluding that the prosecutor had accurately commented on the defense's burden of proof.

The jury deliberated for five hours before returning a guilty verdict for each of the four murders and for the other charges.

The penalty phase of Rogovich's trial was delayed for nearly a year because of renewed concerns about Rogovich's competence. Defense counsel sought a new Rule 11 evaluation, contending that Rogovich's mental state had worsened and that he was unable to assist counsel in preparing for the penalty phase. The court ordered another evaluation. After several doctors had evaluated Rogovich's mental condition, the court concluded that he was competent to proceed to the penalty phase.

The court held a bench trial on the penalty phase, pursuant to Arizona law at the time. *See* Ariz. Rev. Stat. § 13-703(B) (West 1995). The prosecution sought the death penalty. Arizona law required the prosecution to provide notice of the aggravating factors it intended to prove and the evidence supporting those factors. Ariz. R. Crim. P. 15.1(g) (1994). The state sought to prove three statutory aggravators. *See* Ariz. Rev. Stat. § 13-703(F)(1), (2), (8) (West 1995).

One of those aggravators, the (F)(8) factor, is the basis for one of Rogovich's federal habeas claims. The predicate for that aggravator is multiple related killings. The state had to prove Rogovich had "been convicted of one or more other homicides . . . committed during" the offense for which the state was seeking the death penalty. § 13-703(F)(8). The Ari-

zona Supreme Court has explained that, for the (F)(8) factor to apply, there must be "temporal, spatial, and motivational relationships" among the predicate homicides. *State v. Lavers*, 814 P.2d 333, 350 (Ariz. 1991) (internal quotation marks omitted). The prosecutor said that the state would establish these relationships among the three predicate trailer-park killings by showing that Rogovich committed those killings together.

As an additional aggravator for the three trailer-park killings, the state sought to prove that Rogovich had "been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable." § 13-703(F)(1). The prosecution said that it would establish the (F)(1) aggravator by showing that, by the time of sentencing, Rogovich had been convicted of the convenience store killing. As a final aggravator, the state sought to prove that for all four killings that Rogovich had been "previously convicted of a felony in the United States involving the use or threat of violence on another person," § 13-703(F)(2), by showing Rogovich's convictions for armed robbery and aggravated assault were felonies involving the use or threat of violence.

The prosecution then explained how the facts proved to the jury during the guilt phase established each aggravator. It did not put on new evidence independent of the underlying facts proved at trial. The trial court took judicial notice of the facts proved at trial and found the state had established all three aggravating factors for the trailer-park homicides.

The defense then presented its mitigation evidence, all of which was admitted. The defense stressed the role that mental illness played in Rogovich's inability at the time of the murders to conform his conduct to the law. Two mental health experts, Dr. Charles Shaw and Dr. Michael Buck, testified about his long history of both substance abuse and mental illness. Shaw, a clinical addiction specialist, described

Rogovich's dependency on alcohol and stimulant drugs, as well as his history of hallucinations and delusions. Shaw expressed the opinion that drug abuse "would aggravate the pre-existing mental illness symptoms."

Rogovich's mitigation case also emphasized his troubled childhood. Buck, a clinical psychologist, described Rogovich's "dysfunctional family," in which "from a developmental standpoint he didn't have many breaks." Buck had met with Rogovich and had reviewed his medical and family histories. He opined that Rogovich displayed signs of clinical depression as a young child, resulting from physical and emotional conflict between his father and mother. Rogovich's mother remarried, but fought often with Rogovich's stepfather. The stepfather used and manufactured methamphetamine. Buck testified that the mother physically abused Rogovich. In this environment, Rogovich began drinking around age 13, and began using other drugs in high school. Buck explained that when Rogovich began hearing voices in early adolescence, he learned "that if he would drink beer he could stop the voices." Rogovich's substance abuse and mental health issues exacerbated each other. Buck concluded that Rogovich's early mental health issues went unnoticed and untreated, and "[h]e fell through the cracks."

The defense also presented testimony from a private investigator who examined Rogovich's home life during childhood. Mary Durand, a mitigation specialist, stated that Rogovich's father fought often with the mother and was emotionally unavailable to his son. Although Rogovich could remember little from early childhood, he had witnessed physical abuse and had experienced it. Durand also described Rogovich's stepfather as a physically violent drug abuser who was eventually killed in an apparent drug-related murder. As a result of the stepfather's abuse, Rogovich became increasingly "hypervigilant" and paranoid, developing trust issues and becoming "more withdrawn, more lonely, more depressed," and more dependent on drugs. Durand also testified about positive

aspects of Rogovich's adult life. She discussed his attempts to get treatment for his drug and alcohol addictions and described his ability to hold down a job successfully as an automobile painter.

Rogovich's mother addressed the court briefly. She too described Rogovich's painful childhood. She said she had tried to raise him as best she could, but she acknowledged she had "picked some awful husbands." Both of her two ex-husbands had abused Rogovich mentally and physically. She stated that she had attempted to obtain mental health treatment for Rogovich when he was a young child, but that the doctors just told her to stop worrying.

The court found that Rogovich had established six mitigating factors, including the statutory mitigator for a substantial impairment in his inability to conform his conduct to law. *See* § 13-703(G)(1). The other, non-statutory mitigators included, in the court's terms: "Dysfunctional Home Life, Difficult Early Years"; "Lack of Serious Prior Record"; "Good Employment History"; "Good Behavior While Incarcerated"; and "Admission of Guilt/Feeling of Remorse."

The court imposed the death sentence for the three trailer-park homicides, determining that the aggravating circumstances outweighed the mitigating circumstances as to those killings. It imposed a life sentence for the convenience store killing, because it found that the state had not proved the (F)(1) and (F)(8) factors. The trial court imposed consecutive ten-year sentences for the two aggravated assault convictions, plus consecutive fifteen-year sentences for the two armed robbery convictions. Rogovich's federal habeas petition challenges only the death sentences for the trailer-park homicides.

Rogovich timely appealed to the Arizona Supreme Court. Because his trial counsel had been appointed for the trial only, the court appointed new counsel for the appeal, James Kemper of the Maricopa County Public Defender. Kemper argued

that Rogovich was denied due process because he should have been required to consent to the insanity defense. Appellate counsel also raised challenges related to the expert testimony and jury instructions at the guilt phase, but did not challenge Rogovich's death sentences.

The Arizona Supreme Court affirmed Rogovich's conviction and sentences. *See Rogovich*, 932 P.2d at 802. In addition to rejecting his state law evidentiary and instructional challenges, *id.* at 797-99, the court considered and rejected the insanity defense claim that Rogovich now raises in his federal habeas petition. The Arizona Supreme Court concluded that counsel's decision to present the insanity defense did not waive any of Rogovich's constitutional rights and, therefore, did not require "affirmative, recorded agreement" to presenting the defense. *Id.* at 799. It relied on its recent decision in *State v. Hurles*, 914 P.2d 1291 (Ariz. 1996), where it had reached a similar conclusion, and for which Kemper had also been appellate counsel. The court also noted that Rogovich had many opportunities to raise concerns about the choice of the insanity defense, and reasoned that Rogovich did not object even though he was "present at all critical moments." *Rogovich*, 932 P.2d at 799.

Although Kemper did not challenge Rogovich's death sentences on direct appeal, the Arizona Supreme Court conducted what it termed an "independent review of the aggravating and mitigating factors," as was then its practice in capital cases. *Id*. at 799-802; *see* Ariz. Rev. Stat. § 13-701.01(A) (West 1994). In the portion of its analysis that is relevant to the claims here, the court affirmed the trial court's finding that the state had proved the (F)(8) aggravating factor for the trailer-park killings. The state supreme court concluded that Rogovich's trailer-park killings shared the required temporal, spatial, and motivational relationships because they were all part of his "continuing course of criminal conduct." *Rogovich*, 932 P.2d at 801 (internal quotation marks omitted). It affirmed the death sentences.

Rogovich subsequently filed a timely notice for state post-conviction relief and received court-appointed PCR counsel. Rogovich's petition presented a number of arguments, two of which are relevant to his federal habeas petition. The PCR petition argued, inter alia, that appellate counsel rendered constitutionally ineffective assistance by failing to challenge the trial court's finding that the state proved the (F)(8) multiple-homicides aggravating factor. The PCR petition also claimed appellate counsel rendered ineffective assistance by failing to challenge the prosecutor's closing statements concerning the "not guilty by reason of insanity" verdict.

The trial court considered and rejected on the merits Rogovich's PCR claims of ineffective assistance. Counsel filed a petition for discretionary review with the Arizona Supreme Court, which denied the petition.

Rogovich filed his federal habeas petition on October 5, 2000, represented by the federal public defender. Proceedings were stayed until after the United States Supreme Court determined the nonretroactivity of its decision in *Ring v. Arizona*, 536 U.S. 584 (2002), requiring a jury, not a judge, to impose the death penalty. *See Schriro v. Summerlin*, 542 U.S. 348, 353 (2004).

The district court denied habeas relief in 2008 on all of Rogovich's claims. With respect to the claims before us, the district court first held that the Arizona Supreme Court's ruling that Rogovich did not have to consent expressly to an insanity defense was neither contrary to nor an unreasonable application of clearly established federal law. The district court also ruled that the state PCR court did not unreasonably apply *Strickland v. Washington*, 466 U.S. 668 (1984), in rejecting the claim of ineffective assistance for not challenging the (F)(8) factor. It reasoned that counsel was not deficient and that there was no prejudice because, although counsel failed to challenge the factor, the Arizona Supreme Court "independently reviewed the record and concluded that

the (F)(8) aggravating circumstance had been established." On the claim of ineffective assistance for failing to challenge the prosecutor's closing statements, the district court ruled that the prosecutor's closing remarks properly addressed Rogovich's burden of proof and did not suggest that an insanity verdict would result in Rogovich's release.

Rogovich timely appealed. We granted a certificate of appealability for the two ineffective assistance claims, as well as for the claim that express consent was required for the insanity defense.

## DISCUSSION

**Whether Due Process Required Express Consent to the Insanity Defense**

Rogovich challenges on appeal the Arizona Supreme Court's decision that his express consent to the insanity defense was not required, contending the decision was contrary to, or an unreasonable application of, clearly established federal law. *See* § 2254(d)(1). He argues that a defendant must consent to the insanity defense because, like a guilty plea, it results in a waiver of important constitutional rights, such as the presumption of innocence and the state's burden to prove that the defendant committed the crimes. He contends that the invocation of the insanity defense in his case was tantamount to a guilty plea because his defense counsel conceded that he had committed the crimes.

[1] The Arizona Supreme Court rejected Rogovich's argument that the insanity defense is like a guilty plea, because it had just considered and rejected the same argument. The Arizona Supreme Court held in *Hurles* that an insanity defense neither " 'vitiates the presumption of innocence [n]or negates the state's burden of proof.' " *Rogovich*, 932 P.2d at 799 (quoting *Hurles*, 914 P.2d at 1295). The court pointed out that Rogovich could not contend that he did not know the defense

would be presented, because he sat through pretrial hearings addressing the insanity defense, as well as trial, and never indicated any objection. The Arizona Supreme Court thus concluded there was no need for "affirmative, recorded agreement" to the defense. *Id.*

**[2]** At the time the Arizona Supreme Court rendered its decision in February 1997, there was no clearly established federal law requiring the defendant's express consent to the insanity defense. There is none today. To support his position, given the restrictions of AEDPA, Rogovich must rely on Supreme Court decisions in other contexts—decisions requiring courts to inquire before the defendant waives significant constitutional protections like the right to trial and the right to counsel. *See Godinez v. Moran*, 509 U.S. 389, 396, 400 (1993) (requiring knowing and voluntary consent to waive trial and right to counsel); *Indiana v. Edwards*, 554 U.S. 164, 174-78 (2008) (waiver of counsel for conducting trial pro se). Rogovich did not waive those rights, however. He had a trial and was represented by counsel.

He also points to cases involving the defendant's competence to stand trial, which required some on the record inquiry into competence. *See Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). *Dusky* holds a that defendant is competent to stand trial if he has a rational and factual "understanding of the proceedings" and can communicate with counsel "with a reasonable degree of rational understanding." *Id.* Rogovich had a full and fair evaluation of his competence to stand trial under Arizona's Rule 11, and he does not challenge the trial court's ruling. Rogovich also relies on *Edwards*. *Edwards* recognized that a defendant who is competent for trial may nonetheless be incompetent to represent himself at trial, *see* 554 U.S. at 172, 174, but Rogovich did not seek to represent himself. Moreover, *Edwards* was not even on the books at the time of the state court's decision. Only Supreme Court law established at the time of the state court's decision can be a basis for habeas relief under

AEDPA. *See Greene v. Fisher*, 132 S. Ct. 38, 44 (2011). Accordingly, neither *Dusky* nor *Edwards* supports Rogovich's claim.

Rogovich has a secondary challenge relating to the insanity defense. This is a claim that the Arizona Supreme Court got the facts wrong and that its decision was therefore "based on an unreasonable determination of the facts" within the meaning of 28 U.S.C. § 2254(d)(2). The state supreme court's opinion contained an ambiguous sentence. While stressing that Rogovich knew that his counsel would rely on an insanity defense, the court stated that Rogovich did not ever object to the defense even though he was present at "all critical moments." *Rogovich*, 932 P.2d at 799. The use of the phrase "critical moments" may have been unfortunate, because the Supreme Court has used the word "critical" in a different context: it has said a defendant has a right to be present at all critical stages of trial, a category that includes voir dire. *Gomez v. United States*, 490 U.S. 858, 873 (1989). Rogovich was not present at voir dire because his counsel, understandably, waived his presence during jury selection. He now contends that the Arizona Supreme Court unreasonably found that he was present.

Rogovich's argument is premised on a misunderstanding. The state court made no factual finding that Rogovich was present at voir dire. Rather, it explained that Rogovich had failed to object at any time before or at trial when counsel addressed the insanity defense. The state court described those occasions as "critical" because they were instances when Rogovich was present, heard his counsel referring to the defense, and could have raised any concerns he may have had. The court did not find Rogovich was present during all "critical stages" of trial within the meaning of *Gomez*. The state court's decision thus did not rest on an unreasonable factual determination.

**[3]** Because the state court's decision was neither contrary to, nor an unreasonable application of, clearly established fed-

eral law, or based on an unreasonable application of the facts, the district court properly denied relief on Rogovich's claim that he was denied due process with respect to the insanity defense.

## The Ineffective Assistance of Counsel Claims

Rogovich claims that appellate counsel rendered prejudicially deficient assistance in two ways. He contends, first, that appellate counsel rendered ineffective assistance by failing to challenge the prosecutor's closing statements telling the jury the verdict of "not guilty by reason of insanity" was a verdict of "not guilty." He also contends appellate counsel erroneously failed to challenge the (F)(8) aggravating factor for multiple homicides.

The state PCR court denied each ineffective-assistance claim on the merits, and the Arizona Supreme Court denied review. We thus consider the state PCR court's decision as the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991). That court denied relief because Rogovich failed to establish either prong of *Strickland*.

The Supreme Court has said that our review of a state court's adjudication of a *Strickland* claim is "doubly" deferential. *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). We ask "whether there is any reasonable argument" that counsel was effective. *Id.* We need not look at both deficiency and prejudice if the habeas petitioner cannot establish one or the other. *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998).

## Ineffectiveness Concerning Closing Arguments

Rogovich contends that constitutionally effective appellate counsel would have challenged comments the prosecutor made during closing arguments regarding the insanity defense. He contends that the prosecutor misled the jury by

implying Rogovich would be released if found not guilty by reason of insanity. The prosecutor stated:

> They have to prove [insanity] by clear and convincing evidence. *Not guilty by reason of insanity is still not guilty. That's what it means, not guilty . . . .*
>
> *They are asking you to find this man not guilty by reason of insanity. That's not guilty for taking away four of our citizens.*

(emphasis added).

The trial court overruled defense counsel's objection and denied a curative instruction, reasoning that, in context, the statements referred to the defense's burden of proof on the insanity defense and were not improper. Rogovich claims that his appellate counsel was ineffective in not appealing that ruling.

Rogovich presented this *Strickland* claim to the state PCR court, which rejected it, concluding that Rogovich established neither prejudice nor deficient performance of appellate counsel. The federal district court held that the state PCR court's decision was not unreasonable.

No other conclusion would have been tenable in light of Arizona law at the time. In *State v. Cornell*, 878 P.2d 1352 (Ariz. 1994), the prosecutor asked a defense expert witness: "even though you assumed that he shot [a victim], shot her father and did whatever else he did by way of aiming the gun around, he should walk out of the courtroom today a free man?" *Id*. at 1364. The defendant objected on direct appeal that the prosecutor's argument warranted reversal because it improperly stated the defendant would be set free if the jury found him not guilty by reason of insanity. The state supreme court rejected that contention, reasoning the prosecutor's hypothetical question was "essentially true" because the

defendant could have proven "he was no longer mentally ill or dangerous and would have been entitled to release within a short period of time." *Id*. at 1365. The court refused to reverse the conviction.

**[4]** Appellate counsel in this case did not perform deficiently by declining to challenge the prosecutor's statements. The state court had already rejected in *Cornell* a much stronger claim in which the prosecutor in fact implied that the defendant would be released. In light of *Cornell*, Rogovich's appellate counsel reasonably could have concluded that the argument was without merit. Counsel is not required to raise an "untenable issue" on appeal. *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002); *see Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

**[5]** Rogovich cannot show prejudice for the same reason. *See Miller*, 882 F.2d at 1434. As the court had already rejected a stronger claim, there is no reasonable probability that, had appellate counsel raised the argument, the court would have granted relief.

**Ineffectiveness Concerning Sentencing**

Rogovich also contends that constitutionally effective appellate counsel would have challenged the death sentence by arguing that the state trial court improperly used the (F)(8) aggravator. Rogovich contended to the PCR court, and in federal court, that appellate counsel should have argued that the state had not proved a common motivational relationship among the three trailer park-killings, as required under (F)(8).

The state PCR court correctly concluded that Rogovich could not establish prejudice. There was no probability that, had appellate counsel challenged the (F)(8) factor, the Arizona Supreme Court would have reversed Rogovich's death sentence.

**[6]** State law required the Arizona Supreme Court to "independently review the trial court's findings of aggravation and mitigation and the propriety of the death sentence." Ariz. Rev. Stat. § 13-703.01(A) (West 1994). In its independent review, the state supreme court considered whether the state had proven the (F)(8) aggravator. It concluded the state had established that Rogovich's three trailer-park killings shared common temporal, spatial, and motivational relationships. All three killings were part of what the court termed Rogovich's "continuous course of conduct": a shooting spree with a common motivational force connecting three otherwise unrelated killings that occurred close together in time and space. *See State v. Dann*, 79 P.3d 58, 60 (Ariz. 2003) (reaffirming that the state can establish the (F)(8) aggravator where the killings occurred during a "short, uninterrupted span of time").

**[7]** Accordingly, there could have been no prejudice from counsel's failure to raise the issue because the state supreme court considered on the merits whether the prosecution had satisfied the standards for the (F)(8) aggravator, and concluded on its own that a motivational relationship existed. Rogovich provides no basis for concluding that had appellate counsel challenged the (F)(8) aggravator himself, he could have convinced the state court to reach the opposite conclusion. We have previously held this independent review has prevented a habeas petitioner from establishing prejudice under *Strickland* for counsel's alleged failure to challenge the death penalty. *See Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997).

**[8]** In sum, the state PCR court reasonably concluded Rogovich's appellate counsel did not render ineffective assistance. That court's adjudication of Rogovich's ineffective assistance claims was thus neither contrary to nor an unreasonable application of *Strickland*.

**CONCLUSION**

The district court's judgment in favor of the Respondent and denying Rogovich's federal habeas petition is **AFFIRMED**.